[Crim. No. 3001.   First Dist., Div. Two.   Oct. 18, 1954.]

THE PEOPLE, Respondent, v. ROY SAVAGE,
Appellant.

124

James Martin MacInnis and Nicholas Alaga for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

NOURSE, P. J.—The defendant was convicted on a charge of possession of narcotics. He appeals urging particularly three grounds which require consideration. These are:

(1) The insufficiency of the evidence to show possession.

(2) Errors in instructions to the jury.

(3) Misconduct and prejudice of the trial judge.

The facts are that the defendant was the renter and occupant of an apartment on lower Turk Street, in the city and county of San Francisco, and that he was arrested on the complaint of the landlady that too much noise was taking place in his apartment. When the police officers arrived they found six visitors with the defendant, who evidently were holding a party. When the police entered they searched all the occupants and failed to find any narcotics on any one of them. There was no evidence that any one of them had recently been using any kind of narcotics and no evidence of smoke or odor of marijuana cigarettes, which the defendant was charged with having in his possession. They did find on the floor a partly smoked marijuana cigarette which was cold and evidently had been used long prior to its discovery. When the police entered two or three of the visitors were sitting on a davenport; the defendant was in the kitchen and the other men were standing around in different parts of the room. The parties were all arrested and taken to prison. Two days later a cleaning woman purported to have found seven marijuana cigarettes wrapped in

a green napkin and hidden inside the davenport. The evidence showed clearly that defendant had never used narcotics in any form but that other guests had been "users" and that one of these at the time of the trial was confined in the state penitentiary upon his conviction of possession of narcotics.

From these facts it is apparent that the conviction of defendant was based wholly upon the suspicion that someone had hidden the narcotics in the davenport and that since the defendant paid the rent it was reasonable to assume that he was the one who had possession thereof. This conclusion is based wholly upon suspicion. It was just as reasonable to assume that one of the three guests who were sitting on the davenport when the raid was made had hidden the narcotics in the davenport or that the landlady or her cleaning woman had done the same thing. It was just as reasonable to assume that one of the guests who was later convicted of the possession of narcotics had hidden this package when the raid was made. But there is no legal inference possible here that because the defendant paid the rent of the room he was in possession of anything which one of his guests might have brought in. Furthermore there was no evidence that defendant had any knowledge of the presence of the narcotic in the folds of the davenport. (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433].)

■ (2) The defendant proposed a number of instructions to the general effect that to accomplish a conviction it was necessary to conclude that defendant had knowledge of the narcotics in his apartment. They should have been given. Their importance is emphasized by the fact that after the jury had retired for several hours for consideration, they returned with a request for a full definition of "possession of narcotics." The trial judge repeated some of the instructions theretofore given and followed with this statement:

"Now, there is only one person charged with possession of narcotics in this case, and that is the defendant. There have been many references made to other persons, but you are only to consider these instructions, as you have asked for them, in relation to the charge set forth in the Information and the individual who is charged with possession."

This instruction was confusing. It was the contention of the defendant that possession of the narcotic was just as apt to have been in one of his guests and that possession by the defendant was not shown by any competent evidence. The effect of this instruction was to inform the jury that in the opinion of the trial judge any suggestion that the possession

might have been in any one of the guests should be disregarded by the jury, and that the only person that the jury could find to have had possession was this defendant.

After this instruction had been given at 10 p. m. the trial court summoned the jury to return at 10:40 and inquired as to how they stood. When notified that the jury stood "11 to 1" the trial judge then stated to the jury:

"Well, then, I am going to direct that you return to the jury room. I realize that you have been working industriously on this case, ladies and gentlemen,—this is the third day—and it may be necessary—Strike that. It may be necessary to have you repair to a hotel tonight and resume your deliberations in the morning. In any event, you will deliberate until 12:00 o'clock, and if you haven't reached a verdict at that time, then arrangements will be made for your being sent to a hotel, and then you will return tomorrow morning to resume your deliberations." This was followed by the voluntary statement of the trial judge: "In a criminal action it is advisable, in the interests of both the State and the defendant, that a verdict be returned, so that there may be an early conclusion of the case.". The jury returned to the jury room at 10:45 and, after some controversy over green napkins, at 11:32 p. m. returned to the court with a verdict of guilty.

It is impossible to review these proceedings in any other light than that the jury was led to believe from the attitude and statements of the trial judge that he wanted a verdict of conviction and they thereupon complied with his desire. No reasonable person could assume that when the trial judge threatened to lock the jury up for the night if they failed to agree, he must not have known or had reason to believe that the 11 jurors stood for conviction, thus his threat of confinement became a potent weapon in the hands of the 11 jurors to force the one to agree with them.

This attitude of the trial judge is directly in line with that considered in *People* v. *Crowley,* 101 Cal.App.2d 71, 75 [224 P.2d 748], where the court reversed a conviction under similar circumstances and where numerous authorities were cited in support of the judgment. Attention is also directed to *People* v. *Ramirez,* 113 Cal.App.2d 842 [249 P.2d 307], where similar comments of the trial judge resulted in a reversal of the judgment.

(3) On the motion for a new trial it was shown that on the Friday preceding the Monday on which this case was

tried, and while a number of jurors called in this case were sitting in the courtroom, a deputy district attorney approached the judge and suggested that the case be dismissed because the district attorney's office was satisfied that they did not have evidence sufficient to convict the defendant. The trial judge thereupon became very angry and in a loud and angry voice demanded of the district attorney's office that the prosecution should start on the following Monday. As we have said, some of the jurors who were subsequently called in this case were then in the courtroom, and counsel for the defendant offered to prove that some of them had heard this conversation. If those facts were true the prejudice to the defendant is apparent.

We avoid any further comment on the conduct of the trial except to state that throughout the proceedings the rulings and the volunteer statements of the trial judge were such that the jury could not have avoided the conclusion that he was truly convinced of the guilt of the defendant and that he desired a conviction.

Judgment and order reversed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied November 1, 1954, and respondent's petition for a hearing by the Supreme Court was denied November 17, 1954.