[Crim. No. 3158.　First Dist., Div. Two.　Apr. 16, 1956.]

THE PEOPLE, Appellant, v. HALFORD T. FLANDERS, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Appellant.

Joseph C. Haughey for Respondent.

KAUFMAN, J.—This is an appeal by the People from an order of the Superior Court in and for the City and County of San Francisco, dismissing the indictment against respondent Flanders.

On May 2, 1955, respondent Halford T. Flanders was by indictment of the Grand Jury of the City and County of San Francisco charged with violation of section 182 of the Penal Code, conspiracy to violate section 288 of the Police Code of the aforesaid city and county (maintaining a gambling house). He was arraigned on May 9, and on May 16, 1955, he moved to set aside the indictment under section 995, Penal Code, alleging that said indictment was not properly endorsed and presented as prescribed by the Penal Code, and that he was indicted without reasonable or probable cause, in that no evidence was presented showing the commission of any offense by respondent or establishing reasonable or probable cause for believing that he committed any offense.

Early in the morning of Saturday, April 23, 1955, the police raided a North Beach social club at 209 Stevenson Street, San Francisco. There were nine round tables in the club covered with green felt. The tables were surrounded by groups of men who had before them on the tables playing cards and chips. Respondent Flanders identified himself to police as the proprietor of the club. He also identified August Watke at the first table as the house man. There were red, white and pink chips on this table as well as cards in front of the players. There was a pot in the center of the table. Officer Nelder testified that from the position of the cards, it appeared to him that the game in progress was draw poker. The dealer in the officer's presence, drew in the chips and paid off the players in amounts varying from $17.40 to $10.35. Watke told the officer that the red chips were worth 25 cents, the white chips, 5 cents, and the pink chips, one dollar. He also said that he charged each player 25 cents for a half hour.

At the third table, a game of panguingui, also a gambling game, was being played for money. George Kondos paid off the players at this table. He was also identified by re-

spondent as one of his dealers. He stated that Watke took care of the front portion of the establishment and Kondos of the southerly portion.

Inspector Cruickshank testified in similar vein, and identified gambling paraphernalia seized in the raid of respondent's establishment.

Respondent refused to testify on the ground that his answers might incriminate him.

 It is appellant's contention that a constitutional question cannot be raised under section 995 of the Penal Code, and that the court erred in holding that it was a denial of equal protection of the law to prosecute some while others escaped prosecution for breaking the same laws. The respondent's motion was based on the ground that there was no evidence before the grand jury that this respondent conspired with unnamed other persons to violate the antigambling ordinance. The trial judge remarked that after reading the transcript he found it difficult to ascertain with whom defendant was supposed to have conspired, and the prosecuting attorney pointed out that the dealers were in some type of contact with the operator or proprietor. After further discussion of the evidence required to constitute a conspiracy the court stated that his reason for dismissing the conspiracy charge was aside from that, stating that he could take judicial notice of the fact that similar offenses were practiced widespread in San Francisco referring to church "bingo" lotteries which were allowed to run without interference and which were even advertised. He cited the case of *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], to the effect that if the law is administered so as to make unjust and illegal discriminations between persons in similar circumstances, the denial of equal justice is within the constitutional prohibition.

The court admitted that the record before the grand jury did not show that other forms of gambling were being conducted widespread throughout San Francisco in practically every parish. No proof was offered by respondent either at the hearing or before the grand jury that there was discrimination practiced in the enforcement of the gambling law. This issue was interjected by the court. The court stated that he could take judicial notice of the fact that such offenses were practiced by church organizations and were even advertised.

Respondent cites abundant authority to the effect that it is immaterial that the trial court reached its conclusion through an erroneous process of reasoning if it arrived at a correct judgment (*Sears* v. *Rule,* 27 Cal.2d 131, 140 [163 P.2d 443]; *Kuhn* v. *Ferry & Hensler,* 91 Cal.App.2d 805, 810 [206 P.2d 1]; 4 Cal.Jur.2d 390-391), and contends that the record shows discrimination in that if respondent was guilty of a violation of the Municipal Code, the dealers Kondos and Watke were "*particeps criminis*," but respondent was indicted for a felony while the two dealers were not named in the indictment.

In 1949, section 995, Penal Code was amended to permit an indictment to be set aside if defendant has been indicted without reasonable or probable cause. Prior to that time only an information could be set aside under that section for that reason. Undoubtedly, the cases decided under that section relating to the setting aside of an information for lack of reasonable or probable cause should be followed in principle in regard to cases involving indictments. The test as laid down in *People* v. *Platt,* 124 Cal.App.2d 123 [268 P.2d 529], is that an information should be set aside only where there is *no* evidence that a crime has been committed or no evidence to connect defendant with such crime. On a motion to set aside an information, the court may not substitute its judgment as to the weight of the evidence for that of the magistrate conducting the preliminary examination. On such a motion the court will not inquire into the sufficiency of the evidence if there is some evidence in support of the information. (And see *People* v. *Sears,* 124 Cal.App.2d 839 [269 P.2d 683]; *People* v. *Nagle,* 25 Cal.2d 216 [153 P.2d 344].)

In *Greenberg* v. *Superior Court,* 19 Cal.2d 319, 322 [121 P.2d 713], a case arising prior to the 1949 amendment, in which a writ of prohibition was sought to prevent a trial from proceeding, it was held that if there is some evidence to support the indictment, the court will not inquire into its sufficiency. The lack of any evidence, however, conclusively establishes that the grand jury has exceeded its authority.

This court in *People* v. *Hopkins,* 101 Cal.App.2d 704 [226 P.2d 74], reversed an order of the trial court setting aside an indictment under section 995, Penal Code. The defendant therein was accused of manslaughter for having assisted a narcotic addict by holding his arm while the addict administered a shot of heroin to himself, from which he subsequently died.

The court cited the Greenberg case, *supra,* and also noted that section 921, Penal Code, requires the grand jury to find an indictment "when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury." There was clearly evidence herein that defendant had violated the antigambling ordinance, there was evidence from which it could be inferred that the dealers were cooperating with him in some form of agreement to violate this ordinance. The evidence was certainly unexplained and uncontradicted, since respondent did not choose to testify.

Even if it be assumed that it is proper to raise the question of discriminatory enforcement of the gambling laws on a motion made under section 995, it appears that the rule of the case of *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220] does not stand for the proposition that persons violating the law are to have equal protection from prosecution, but rather for the proposition that equal protection of the law will be extended to all persons in the pursuit of their lawful occupations regardless of their race. In the cited case, the San Francisco ordinance giving the board of supervisors authority to grant or withhold licenses to operate laundries within the city, with no criterion set forth in the ordinance on which such permits were to be granted or denied, was held unconstitutional as conferring upon said supervisors arbitrary power. In that case it was proved that licenses were withheld from all Chinese operators, while they were granted with but one exception to all proprietors of laundries who were not members of that race.

In *People* v. *Darcy,* 59 Cal.App.2d 342 [139 P.2d 118], the same argument based on the Yick Wo case was raised, as is now urged by respondent herein. The court there stated that if such an argument was accepted it would lead to the rule that "if some guilty persons escape, others who are apprehended should not be prosecuted."

In *Ah Sin* v. *Wittman,* 198 U.S. 500 [25 S.Ct. 756, 49 L.Ed. 1142], a case involving violation of an antigambling ordinance in San Francisco, petitioners relied on the Yick Wo case. It was noted by the court in affirming a judgment of the superior court discharging a writ of habeas corpus, that appellant was seeking to set aside a criminal law of the state not on the ground that it was unconstitutional on its face, nor discriminatory in tendency and ultimate actual operation as the

ordinance was in the Yick Wo case, but that it was made so by the manner of its administration. This, it was held, was a matter of proof which must be made out completely when the power of a federal court was invoked to interfere with criminal justice in a state.

In *People* v. *Montgomery*, 47 Cal.App.2d 1 [117 P.2d 437], it was observed that appellant therein argued that "equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons." The court noted that the remedy for unequal enforcement of the law "does not lie in the exoneration of the guilty at the expense of society." It commented on the Yick Wo case, stating that there was an obvious distinction between extending protection to persons of the Chinese race in pursuance of the business of laundering, and extending protection to those engaged in pandering, and that while equal protection will be extended to all in the pursuit of lawful occupations, no one has the right to demand protection in the commission of a crime. The court concluded that the only possible extension of the doctrine of the Yick Wo case to a criminal matter would be an instance where a person was under prosecution for the commission of some otherwise harmless act which ordinarily had not theretofore been treated as a crime.

It was also noted in that case that appellant therein had not attempted to defend on the basis of discriminatory enforcement of the law even if such a defense were available to him. In the instant case respondent based his motion on the argument that there was no evidence of a conspiracy to support the felony charge, and brought in no evidence of discriminatory enforcement.

Since there was some evidence in the record before the grand jury of a conspiracy to violate the antigambling ordinance, to which respondent was a party, it was error to grant the motion to set aside the indictment. (See *People* v. *Hopkins, supra.*)

Order reversed.

Nourse, P. J., and Dooling, J., concurred.