[Crim. No. 3439.    First Dist., Div. One.    Nov. 7, 1958.]

THE PEOPLE, Respondent, v. EARL HAWKINS, Appellant.

Gilbert L. Harrick, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged with the sale and possession of narcotics. He admitted a conviction on a prior addiction charge. He was tried before the court without a jury, and found guilty on the sale count. The possession count was dismissed. He now appeals, contending that the evidence is insufficient to sustain the findings.

At the threshold of this appeal we are met by the contention that the notice of appeal was filed too late. The judgment was entered on July 24, 1957, and the notice of appeal was filed with the clerk of the proper superior court on August 7, 1957. Thus, prima facie, the notice of appeal was filed four days too late. By an augmented record the defendant argues, however, that the notice was constructively filed within the 10-day required limit. We agree with this contention.

The augmented record shows that defendant was taken to the Reception-Guidance Center at San Quentin on July 24, 1957, the day that judgment was entered. That was a Wednesday. The very next day defendant requested, in writing, permission to consult with a staff member about his appeal. On August 1, 1957, a week later, and still within the required 10-day period, defendant deposited signed copies of his notice of appeal with the officials at the center for mailing. He had no envelope or stamp. He requested that it be mailed. Apparently someone at the center misdirected the notice to the District Court of Appeal here in San Francisco, and caused it to be mailed on Monday, August 5, 1957. It was finally filed with the clerk of the superior court on August 7, 1957.

The delay in the mailing occurred because, apparently, the notice of appeal did not reach the mail room of the center until late Friday, August 2nd. Since that room is not open

on Saturday or Sunday the notice was not mailed until August 5, 1957, Monday. It was misdirected to the wrong court by someone in the center, and did not reach the clerk of the superior court until August 7, 1957.

It is apparent that the delay was not the fault of the defendant, but was caused by the acts of the prison officials. Had the notice been properly mailed on August 1st or 2nd it would have been received by August 3rd, the last day for filing. Thus, the defendant deposited the notice with the prison officials well within the 10-day period. He had no control over the acts of the prison officials. Under such circumstances it must be held that the notice was constructively filed within the 10-day period. (*People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868].)

The transactions leading up to the charge here involved occurred in the late evening hours of February 20, 1957, and the early morning hours of February 21, 1957. At that time Robert Nikaoloff, a federal narcotic agent, was working with the San Francisco police department on narcotic cases. Just before midnight on February 20, 1957, Nikaoloff met an informer, Rudy Martinez by name, around the corner from a designated pool hall on Fillmore Street in San Francisco. Nikaoloff entered the informer's car and searched him to see if he had any narcotics. None was discovered after a reasonably thorough search. Then Nikaoloff gave Martinez $20 in marked bills. The two then drove to a spot where the entrance to the pool hall could be seen. The informer walked to the pool hall, being in sight of Nikaoloff until he disappeared into the pool hall. During this walk the informer talked to and met no one. Nikaoloff also testified that in a short time defendant came out of the pool hall and walked some place outside of the vision of the officer. In about 10 minutes he returned and again entered the pool hall.

Officer McKinley, an officer in the San Francisco police department with whom Nikaoloff was working, then continued the story. He testified that shortly after 9 p.m. on February 20, 1957, he and another officer parked in a panel truck directly in front of the pool hall in question. The two officers concealed themselves in the back of the enclosed truck. Holes, about the size of a dime, had been drilled in the side of the truck, and the officers kept a lookout through these holes of the interior of the pool hall. McKinley also testified that shortly after midnight he saw Martinez enter the pool hall and walk up to the defendant; that they conversed for a short time and

then shook hands. Defendant then left the pool hall, and Martinez remained therein. Defendant, about 10 minutes later, returned to the pool hall, and approached Martinez. McKinley saw a small white package passed from defendant to Martinez, and then saw Martinez leave the pool hall.

Martinez walked directly to the vehicle in which Nikaoloff was sitting. From the time he first left that vehicle until he returned to it he was under the observation of either Nikaoloff or McKinley, and during that time the only person he contacted was the defendant.

Upon returning to the automobile Martinez handed the agent two bindles done up in white paper. A search of Martinez disclosed that he no longer had the $20 in bills given him by Nikaoloff.

In addition to these facts, Nikaoloff testified that, according to his recollection, the weather was clear during these occurrences, and that it was not raining, but that it might have rained earlier in the evening. McKinley also opined that it was clear during the critical periods here involved.

Defendant was not arrested until the late evening of February 21, 1957. At that time none of the marked bills was in his possession. McKinley testified that he had participated in the arrest and that he had then examined defendant's arms and found numerous old and recent needle marks in the vein line of each arm.

Defendant took the stand and admitted being in the pool hall in the late hours of February 20th, and admitted that he knew Martinez casually. He admitted that Martinez came into the pool hall on that night, but testified that he did not talk to him but did talk to others. Defendant also admitted leaving the pool hall for a few minutes as testified to by both officers, and claimed he went to a nearby liquor store to buy cigarettes because they were cheaper there than at the pool hall. When defendant returned to the pool hall Martinez was talking with another patron. Other than to exchange salutations, defendant did not talk to Martinez, did not shake hands with him, and did not hand him a small white package. He also testified that when he was outside the pool hall it was raining.

At the close of this testimony the trial court granted defendant's counsel a week's continuance to enable him to check the weather conditions on the night in question. The defendant's counsel, when the trial was resumed, read into the record a letter from the United States Weather Bureau stating that

their records showed that it was raining between 11 p.m. of February 20, 1957, and 1:30 a.m. of February 21, 1957, and that in the hour before midnight .16 inch of rain fell, and that in the next hour .08 inch of rain fell.

■ The sole contention of appellant is that the evidence is insufficient to support the verdict. He correctly points out that the only evidence directly connecting him with the crime is that of Officer McKinley, and contends that such evidence is unbelievable, and so weak as not to constitute evidence at all. Nikaoloff's testimony places Martinez in the pool hall with no narcotics and with $20 in marked bills. McKinley's testimony is to the effect that Martinez and the appellant conversed, shook hands, and then appellant left the pool hall, returned in a few moments and handed Martinez a white package. When Martinez returned to the car in which Nikaoloff was sitting he handed Nikaoloff two bindles of heroin wrapped in white paper. Martinez no longer had the $20 bills. From the moment Martinez first left Nikaoloff until he returned and delivered the two bindles of heroin to Nikaoloff, Martinez was in the sight of either Nakaoloff or McKinley. During all that period Martinez contacted or talked with no one but the appellant. The evidence was obviously sufficient. The officers are to be congratulated for a good job of police work.

■ The only real attack on the evidence is in relation to the condition of the weather. Both officers testified that it was not raining, and the letter from the weather bureau indicates to the contrary. This conflict, if it be a real conflict, was for the trial court. The officers were testifying about facts that occurred on February 20, 1957. The trial was had in June of 1957. It is possible that the officers erred as to the condition of the weather. But they were clear in their testimony that at all times relevant they could see, and see clearly, the appellant and Martinez. The facts they testified to are sufficient to support the finding that appellant at that time and place sold heroin to Martinez. The credibility of the witnesses and the weight to be given their testimony was for the trier of the facts. The fact that it may have been raining, contrary to the testimony of the officers, was merely a factor in determining their credibility. It is not conclusive.

The judgment appealed from is affirmed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.