[Crim. No. 3543. First Dist., Div. One. Aug. 10, 1959.]

THE PEOPLE, Respondent, v. GEORGE FERNANDEZ, Appellant.

Willard P. Norberg, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

BRAY, P. J.—Defendant was charged by indictment with four counts of felony: (1) violation of Health and Safety Code, section 11500 (sale of heroin on January 30, 1958); (2) violation of same section (sale of heroin on January 31); (3) violation of same section (possession of narcotic on February 4); (4) violation of Health and Safety Code, section 11557 (maintenance of a place for sale and use of narcotics). Defendant admitted a prior conviction of violation of section 11500. Defendant's motion under section 995, Penal Code, to dismiss the indictment was denied. A jury found defendant not guilty of count 2 and guilty of the other three counts. Judgment was thereupon entered upon counts 1, 3 and 4, and defendant was sentenced to concurrent terms. Motion for new trial was denied as to counts 1 and 3, but granted as to count 4, which was thereupon dismissed. Defendant appeals from the judgment on counts 1 and 3 and from the denial of a new trial thereon.

### Questions Presented

1. Is an order denying motion to dismiss indictment reviewable on appeal from judgment of conviction?
2. Must informant be produced at grand jury hearing?
3. Sufficiency of evidence: (a) count 1; (b) count 3.

### Evidence

Officer McKinley testified that on January 30 one Garcia, an informant, was searched, found free of narcotics, and given $20. Officer Cruz and Garcia then went to a street corner where they met Officers McKinley and Getchell. The latter left and stationed themselves in a building from which Mc-Kinley watched Garcia cross the street and enter the Garden City Cleaners, owned and operated by defendant. The witness saw Garcia speak briefly with Marin, a presser in the shop. Garcia then left and walked toward Cruz' automobile. He

was out of sight for a few moments of McKinley and Getchell. Officer Cruz testified that Garcia was in his sight at all times, including these moments, except when inside the cleaning shop, and that Garcia did not have contact with any other person. He then reentered their sight, walking toward the cleaners. Approaching the shop he turned and went back to the street corner where he remained for two or three minutes. Defendant drove up and entered the shop. Garcia followed him in and spoke to him. Their hands met and Garcia appeared to put something into the left cuff of his jacket as he turned. Garcia then returned to Cruz' automobile where Garcia gave Cruz a bindle of heroin. Cruz and Garcia then met the other officers, and went to the police station where a search of Garcia revealed no money in his possession.

Testimony was given of a somewhat similar series of events on January 31 watched by the officers with telephoto camera and binoculars and in which Garcia carried on his person a concealed transmitter. This related to count 2 of which the jury acquitted defendant. The occurrences on February 4 (count 3) will be discussed later.

### 1. *Denial of Motion to Dismiss Indictment is Reviewable.*

■ Plaintiff contends that such denial is not reviewable on appeal from the judgment of conviction, relying upon its construction of section 1259, Penal Code. *People* v. *Simmons* (1897), 119 Cal. 1 [50 P. 844], held that an appeal would lie from such an order under section 1259, Penal Code. *People* v. *Dewson* (1957), 150 Cal.App.2d 119 [310 P.2d 162], dealing with an *information*, incorrectly construed the Simmons case as interpreting section 1237, Penal Code (providing appeal from judgment and orders after judgment) and held the reviewability was under that section. Simmons actually found reviewability under section 1259, setting forth what is reviewable on appeal. However, it is clear that an order denying motion to dismiss indictment is not directly appealable. (*People* v. *Simmons, supra,* 119 Cal. 1; *People* v. *Hernandez* (1957), 150 Cal.App.2d 398, 400 [309 P.2d 969].)*

In *People* v. *Egan* (1946), 73 Cal.App.2d 894, 897 [167 P. 2d 766], the court, by way of dicta, said of an order denying a motion to set aside an indictment: "The order would be reviewable only on appeal from the judgment itself." A series of cases hold that an order denying a motion to dismiss an

*Defendant purported to appeal from such order here. His appeal will have to be dismissed.

*information* may be reviewable upon appeal from judgment of conviction. (*People* v. *Dewson, supra,* 150 Cal.App.2d 119; *People* v. *Rebolledo* (1949), 93 Cal.App.2d 261, 264 [209 P.2d 16]; *Nelson* v. *Superior Court* (1947), 77 Cal.App.2d 783, 785 [176 P.2d 390].) We see no difference between the reviewability of an *information* and an *indictment* in respect to reviewability.

Plaintiff points out that in 1897 when *People* v. *Simmons, supra,* 119 Cal. 1, held such an order reviewable under section 1259, Penal Code, that section provided review on appeal from judgment of ''any intermediate order.'' In 1909 the section was amended restricting the review to things done ''at the trial or prior to or after judgment . . .'' ''Trial'' begins when the jury is impaneled and hence does not include rulings on motions made prior thereto. Plaintiff contends that the effect of this amendment was to overturn the Simmons decision.† Apparently this contention has never been passed upon. However, the theory of the Simmons case and the other cases above mentioned upholding the right of review upon appeal from judgment is that for purposes of review, such an order was ''said or done at the trial or prior to or after judgment.''

Defendant further contends that the testimony of the police officers before the grand jury did not cover the entire actions of the informant from the time he left the officers until he returned with the heroin, and therefore it was necessary in order to show probable cause that the informant be produced to account for the time he was out of the sight of the officers. He also contends that there was the same ''gap'' in the evidence at the trial. As will hereinafter be shown, there was no such ''gap.''

2. *Must Informant be Produced Before Grand Jury?*

█ The answer is ''No.'' As said in the dissenting opinion of Mr. Justice Spence in *Priestly* v. *Superior Court* (1958), 50 Cal.2d 812, 824 [330 P.2d 39], which case dealt with the ques-

---

†Plaintiff contends that defendant's remedy was either prohibition under section·999a, Penal Code, habeas corpus under section 1487, Penal Code, or mandamus. However, see *Nelson* v. *Superior Court, supra,* 77 Cal.App.2d 783, 785, and *People* v. *Duncan* (1942), 50 Cal.App.2d 184, 188 [122 P.2d 587], holding mandamus not a proper remedy. Without considering the applicability of prohibition or habeas corpus, it is clear that they would not be exclusive remedies. In *Nelson* v. *Superior Court, supra,* 77 Cal.App.2d 783, the court stated that remedy by appeal from the judgment was not inadequate merely because less expeditious than an extraordinary writ.

tion of disclosure of the name of an informant at the preliminary examination (no indictment was involved), there is no necessity of producing the informant before the grand jury since the accused would have no opportunity to cross-examine him nor even to demand disclosure of an informant's name. The theory of the Priestly case is that the identity of an informer whose communications are relied on to establish probable cause to make a search must be disclosed when requested at the preliminary hearing, in order that the defendant may have an opportunity to produce him if the defendant so desires, and examine him in possible rebuttal of the police officer's testimony concerning him. (The case does not hold that the prosecution must *produce* the informant at the preliminary examination.) A defendant has no right to cross-examine a witness before the grand jury. The question on a grand jury indictment is whether the evidence there presented, taken together, if unexplained or uncontradicted, would in the grand jury's judgment warrant a conviction by a trial jury. (Pen. Code, § 921.) Here the testimony before the grand jury was that of Officers Getchell and Cruz, substantially the same as given at the trial. It was amply sufficient to show probable cause without the testimony of Garcia. " 'If there is some evidence to support the indictment, the courts will not inquire into its sufficiency . . .' " (*Lorenson* v. *Superior Court* (1950), 35 Cal.2d 49, 55 [216 P.2d 859]; *Greenberg* v. *Superior Court* (1942), 19 Cal.2d 319, 322 [121 P.2d 713]; *People* v. *Flanders* (1956), 140 Cal.App.2d 765, 768 [296 P.2d 13].)

3. *Sufficiency of Evidence.*

(a) Count 1.

 The conviction on this count is well supported. *People* v. *Barnett* (1953), 118 Cal.App.2d 336 [257 P.2d 1041], held that if complete observation of the informant participant is not had from departure from police custody to return, the mere fact that he returns with narcotics and without money will not support a conviction of the alleged seller. But this is not that kind of a case. Here the testimony of Officers McKinley and Cruz was that Garcia was continually in the sight of one or the other at all times, and that Garcia did not come in contact with any person other than defendant.

Defendant's contention that there was a "gap" in the evidence as to the movements of Garcia, is based primarily upon his interpretation of the testimony of Officer McKinley, who

testified that through binoculars he saw Garcia and defendant touch hands in the shop and then saw Garcia putting something in the left cuff of his jacket. On cross-examination McKinley said that Garcia as he turned "was doing this to his cuff (indicating) . . . I couldn't see what he was doing, just turning his cuff, was placing something into the cuff." He was then asked ". . . when you say 'placing something into the cuff,' you are assuming, are you not? A. I am assuming." He then said that he didn't see anything placed in the cuff. Taking the testimony of all the officers together, one or more had Garcia under surveillance at all times and at no time did Garcia have contact with any person other than defendant. Although McKinley did not see Garcia after shaking hands with defendant place anything in his cuff, he did see him make a movement as if doing so, and the jury could very well under the evidence reasonably infer that Garcia did receive the narcotic from defendant at that time. There was no "gap" in the "line of sight" testimony.

Defendant contends that defendant's employee Marin could have furnished the heroin. (He was later booked on a narcotics charge.) To have found that Marin gave the heroin to Garcia the jury would have had to disregard McKinley's testimony. This the jury did not do. The fact that the evidence fails to show what became of the money given Garcia except that he no longer had it, was a circumstance for the jury to consider. We have no right to interfere with its determination. (See *People* v. *Daugherty* (1953), 40 Cal.2d 876, 885 [256 P.2d 911] ; *People* v. *Newland* (1940), 15 Cal.2d 678, 681 [104 P.2d 778].) In *People* v. *Richardson* (1957), 152 Cal.App.2d 310 [313 P.2d 651], *People* v. *Barnett, supra,* 118 Cal.App.2d 336, and *People* v. *Lawrence* (1959), 168 Cal.App.2d 510 [336 P.2d 189], the informant participant was out of sight of the officers for considerable periods of time and there were sources other than the defendant from which the narcotics could have been obtained. That is not true in our case. The situation in our case is more like the situations in *People* v. *Holland* (1958), 158 Cal.App.2d 583 [322 P.2d 983], *People* v. *Alvidrez* (1958), 158 Cal.App.2d 299 [322 P.2d 557], and *People* v. *Hawkins* (1958), 164 Cal. App.2d 824 [331 P.2d 171].

(b) Count 3.

██ In a prosecution for unlawful possession of narcotics the People must prove that the narcotic was under defend-

ant's dominion and control, that defendant was aware of its presence and knew it to be a narcotic. ■ These elements may be established by circumstantial evidence. (*People* v. *Lopez* (1959), 169 Cal.App.2d 344, 349-350 [337 P.2d 570]; *People* v. *Tabizon* (1958), 166 Cal.App.2d 271, 273 [332 P.2d 697].) ■ On February 4, five police officers and two undercover men entered defendant's shop. Marin was the only person on the premises. In a few moments Garcia was brought in by one or two of the officers who apparently had left the shop to get him. Marin and Garcia were taken into the back of the shop. Al Gloria then was on the premises also. The only testimony as to the search of the premises is that given by Garcia. He stated that the officers searched among other things the clothing on the racks; that defendant entered the shop and was placed under arrest. About 20 minutes after his arrival the officers found a bindle of narcotics in the pocket of a suit which had been cleaned and was hanging on the rack waiting to be pressed. The suit did not belong to defendant. When asked to whom it belonged defendant said he would have to look at his records. Apparently he was not permitted to do so. The narcotic was dry. Plaintiff contends that this evidence justifies the inference that defendant after he entered the shop placed the narcotic in the suit. At the trial its theory apparently was that because of his ownership of the shop defendant was chargeable with possession of the narcotic found on the premises. No police officer testified to the search prior to defendant's entry, nor was there any testimony that that search did not discover narcotics. Evidence of the prior search was not given in plaintiff's case. Defendant called Garcia, brother of the informant, who said he saw the officers making the search. He did not and possibly from his vantage point could not, say that no narcotic was discovered in that preliminary search. It seems hard to believe that with at least five officers present defendant could have placed the narcotic without some one of them seeing him do so. No evidence was offered as to whether defendant at any time approached the suit. He was arrested shortly after he entered the store near the front counter, the racks being toward the rear. Thus, it could not reasonably be inferred that defendant dropped the narcotic after his arrival.

■ As to constructive possession because of the ownership of the store, the evidence is not sufficient to justify a conviction. Marin who had charge of the shop during de-

fendant's absence may have placed the narcotics in the suit. Marin was subsequently booked for a narcotics violation. There was no evidence that from the time the suit was cleaned no one else had access to the racks. Both Garcia and Gloria were also in the shop, although while the officers were there they were not near where the suit hung. The fact that defendant had sold narcotics there a few days before was not sufficient evidence that he knew that a narcotic was in the suit on this day. The situation was somewhat similar to that in *People* v. *Savage* (1954), 128 Cal.App.2d 123 [274 P.2d 905], where narcotics were found in the defendant's room. The court held that it was just as reasonable to assume that guests of defendant, the landlady, or cleaning woman, hid the narcotics as to assume that the defendant did so. There was no evidence of knowledge by the defendant and his guilt could not be inferred merely because he paid the rent for the room. So here, defendant's ownership of the shop is not sufficient to justify an inference that he knew the narcotic was in the suit. In *People* v. *Antista* (1954), 129 Cal.App.2d 47 [276 P.2d 177], the evidence was held insufficient, where the defendant did not have exclusive use of the apartment in which the narcotic was found. ██ The burden is on the People to establish knowledge of the presence of the narcotic. (*People* v. *Winston* (1956), 46 Cal.2d 151 [293 P.2d 40].) The People did not meet that burden in this case.

The purported appeal from the order denying motion to dismiss indictment is dismissed. The judgment and order on count 1 are affirmed, and on count 3 the judgment and order are reversed.

Wood (Fred B.), J., and Tobriner, J., concurred.

The petitions of appellant and respondent for a hearing by the Supreme Court were denied October 7, 1959.