[Crim. No. 8129. Second Dist., Div. Three. Nov. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE R. WALTREUS, Defendant and Appellant.

Burton Marks for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Eugene R. Waltreus and Loye O. Maushardt were accused by information in count I of soliciting the offer of a bribe in violation of section 653f of the Penal Code, in count II of attempted grand theft and in count III of conspiracy to commit grand theft. In the preliminary hearing they were bound over for trial. They made a motion under section 995 of the Penal Code for dismissal of the information, which was denied. They sought a writ of prohibition in the District Court of Appeal, which was denied. In a nonjury trial, defendants were found not guilty under count I, but were convicted under counts II and III of the information. They made a motion for new trial, which was denied and they were sentenced separately on each of counts II and III, the sentences to run concurrently. Defendant Waltreus appeals from the judgment and from the order denying his motion for new trial.

The points on appeal are: (1) a witness was improperly permitted to remain in the courtroom during the preliminary examination; (2) the evidence at the preliminary was insufficient to show probable cause that a crime had been committed; (3) there was error in the exclusion of evidence upon objection by the People; and (4) the evidence was insufficient to prove the guilt of defendant of any offense.

At the commencement of proceedings at the preliminary defendant's counsel stated: "May I request that all persons be excused from the courtroom except the witness testifying?"

Present in the courtroom was Mr. Dennett who had signed the complaint against the defendants. Defendants' attorney requested that the "investigating officer," meaning Dennett, be excused. The court ordered that Mr. Dennett might remain and that all others would leave the courtroom with the exception of an additional deputy district attorney. In making his requests defendants' attorney did not state whether he moved under section 867 or 868 of the Penal Code. The exclusion of witnesses under section 867 is discretionary with the court; the exclusion of all persons, with the exception of those named in the section who need not be excluded, is mandatory under section 868. (*People* v. *Prizant,* 186 Cal. App.2d 542 [9 Cal.Rptr. 282].) As the section read at the time of trial, among the persons permitted to remain were "the prosecutor and his counsel" and the district attorney of the county. Section 868 was amended in 1961, and "the investigating officer" was added as one who might remain, thus making it clear that the prosecutor and the investigating officer were not to be regarded as one and the same, and that two persons, fitting the descriptions, may remain. At the time the preliminary was held, the fact, alone, that Mr. Dennett was the investigating officer, if such were the fact, would not have justified his being allowed to remain, but his presence was permissible if he was the prosecutor. Mr. Dennett was the supervising special investigator with the Department of Alcoholic Beverage Control and he was a witness in the case. He also signed the criminal complaint. He was the one who initiated the criminal proceedings. The purpose of naming the prosecutor is to permit the presence of the person who initiated the prosecution, and this may be either one who signed the complaint or the victim of the crime charged, who sought prosecution of the offender, and upon whose testimony the People would rely. A female, the victim of an offense, and who intends to appear as the prosecuting witness, is to be regarded as a prosecutor within the meaning of the section (*People* v. *Prizant, supra*), but in order to be the prosecutor one need not be the victim. Anyone with sufficient knowledge of the facts could have signed a criminal complaint, and thereby have become the prosecutor. Inspector Dennett was the prosecutor within the meaning of section 868. (*People* v. *McCain,* 200 Cal.App.2d 825 [19 Cal.Rptr. 550].)

Appellant's second point is that the evidence was insufficient to justify his commitment for any offense. The point is with-

out merit, but it requires a somewhat extended statement of the evidence adduced at the preliminary. Robert Guthrie was the proprietor of a cocktail lounge in Long Beach. James Guthrie was his brother. Robert was negotiating for the purchase of the Stardust cocktail lounge and had an application on file with the Department of Alcoholic Beverage Control for consent to a transfer of the liquor license. Waltreus was a licensed real estate and business opportunity broker. Maushardt was one of the partners operating the bar known as Mardi Gras in Long Beach. Maushardt telephoned James Guthrie and told him it would be beneficial for Robert to meet him (Maushardt) at the Mardi Gras. At Robert's request James met Maushardt and was told by the latter that Robert was going to have difficulty in obtaining consent to a transfer of the license but that he (Maushardt) knew a big man who could help in the matter; he said the difficulty was that James was to be associated in the business with Robert and they had both been in trouble, James being an ex-convict. At Maushardt's insistence it was arranged that a meeting would be had with the man he had described. Shortly thereafter James and Robert met Waltreus and Maushardt at Henri's Whip. They sat in Waltreus' car. Waltreus told the Guthries that the license was being held up in Sacramento because of trouble the Guthries had been in, but that he (Waltreus) could have the license put through for the sum of $2,500; he had an organization that dealt with such matters; he could pull any papers that were detrimental to the issuance of the license; he would do this for $2,500; he had handled a number of such matters successfully in the same manner. Nothing was agreed upon at this meeting. About a week later Maushardt called James again and told him that unless they enlisted the services of Waltreus the license would never be obtained. Another meeting was arranged and when the four met Robert took along a wire recorder and recorded the conversation. At this meeting Waltreus stated in detail how he would accomplish the consent to transfer the license; he had two men on the board in Sacramento he had bought off; he would have to take care of the Los Angeles office, as well as the Long Beach and Sacramento offices; he would use $2,000 for this purpose and all he would have left would be $500. He insisted that the money would have to be raised by 2 o'clock the following afternoon and if it was paid to him the transfer would be approved within 15 days. Maushardt was present at both conversations and actively participated in the same. The

second conversation as recorded was transcribed and the transcription used in evidence. The proposals of defendants that for $2,500 Waltreus would bribe officials and procure consent to the transfer of the license was testified to in detail by both James and Robert Guthrie. The transcriptions of the tape recording strongly corroborated the testimony of the Guthries. After the second meeting James had a conversation over the phone with Maushardt in which he played to Maushardt a portion of the recording; Maushardt threatened violence against James if he made use of the recording. James had a similar conversation with Waltreus and told him that he had a tape of the conversation. Waltreus refused to discuss the matter and hung up the phone.

In appellant's contention that the foregoing evidence at the preliminary failed to establish probable cause, it is not argued that the evidence was insufficient to show the solicitation of an offer of a bribe by appellant; it is only argued there was no evidence that the representations of Waltreus were false, or, in others words, there was no evidence that he could not or that he would not bribe persons in the Long Beach, Los Angeles or Sacramento offices of the department. The contention is unsupportable.

It was the duty of the magistrate to draw inferences from the testimony of the Guthries and the transcription of the recording, with respect to the truth of the representations made by appellant. The magistrate reached the conclusion that it was more reasonable to believe that appellant and Maushardt were scheming to cheat Robert Guthrie than that Waltreus could and would bribe officials of the department. The magistrate was weighing the credibility of one who represented himself to be a rascal, and devoid of moral responsibility, and the reasonableness of his representations. It was not unreasonable for the magistrate to doubt that Waltreus could and would have carried out his promises by bribing not one individual but several in each of the three offices of the department. Therefore, the conclusion of the magistrate as to the credibility of Waltreus and the inferences to be drawn from the evidence is not subject to review. (*People* v. *Fernandez*, 172 Cal.App.2d 747 [342 P.2d 309].)

In order to justify the commitment of the defendants it was not necessary that the magistrate should have believed that a crime had been committed, but only that the evidence justified a reasonable suspicion that the law had been violated.

(*People* v. *Tracy,* 199 Cal.App.2d 163 [18 Cal.Rptr. 487].) Here there was a basis for much more than suspicion; by far the more reasonable inference was that the representations and promises of the defendants were false and uttered with a fraudulent purpose. There was ample evidence to warrant the commitment of appellant.

In order to discuss the claims of error in the sustaining of objections of the People to some of defendant's questions, it is necessary to state the nature of the defense that was presented. This was that James Guthrie sought the assistance of Maushardt to aid in procuring consent to transfer of the license; Maushardt contacted Waltreus and informed him of the conversation with James; Waltreus contacted Captain Anderson of the Long Beach Police Department and advised him of the approach to Maushardt; Anderson referred Waltreus to another department of the force; Waltreus talked with Inspector Thiele, who told him to proceed, and if there was a proposal of a bribe to report it to him (Thiele); Waltreus and Maushardt then had one conversation with the Guthries; this was the one that was recorded; Waltreus, aided by Maushardt, outlined to the Guthries the plan to which the latter testified, namely, that for $2,500, to be paid by Robert Guthrie, Waltreus would bribe members of the three offices of the department in Long Beach, Los Angeles and Sacramento and procure consent to transfer of the license, which otherwise would be denied. Thus, the defense, as explained fully by Waltreus, was that he and Maushardt, in cooperation with the police, were merely leading the Guthries into making a proposal to bribe officials of the department, and thus bring two malefactors to justice. Anderson testified to a conversation with Waltreus prior to the meetings with the Guthries. Thiele testified to a conversation in which Waltreus discussed a plan to entrap the Guthries and that he (Thiele) instructed Waltreus to report to the police if the Guthries made any proposal of a bribe. Upon cross-examination, Thiele admitted a recent conviction of a felony.

Appellant assigns error in the rulings sustaining objections to questions proposed to his witnesses.

Maushardt was asked whether after his first talk with James Guthrie he had a talk with Waltreus at the Mardi Gras. He answered in the affirmative and when he proceeded to tell what Waltreus said the district attorney's objection was sustained, but he testified that at that time Waltreus

asked him to attend a meeting with him (Waltreus). Although he had not been asked to state the conversation, he volunteered to do so, but this was not the ground of the court's ruling. The court apparently believed that the conversations between Waltreus and Maushardt were inadmissible as hearsay. This, we believe, was error. When defendants were charged with conspiracy, and in view of the fact that they maintained they were acting in cooperation with the police, they should have been permitted to testify to any conversations had or arrangements made between themselves which might have tended to support their defenses that they had made no unlawful agreement.

Maushardt testified that prior to the meeting with the Guthries Waltreus had asked him to assist in getting the Guthries to solicit a bribe. Since no statement was made by the defendants' attorney as to what further he expected to prove as to the earlier conversation between the two defendants it may be assumed that in their conversation they discussed a plan to induce the Guthries to offer a bribe. Maushardt was asked whether Waltreus had told him that he (Waltreus) had consulted the Long Beach Police Department with regard to the Guthrie brothers and he answered in the affirmative. The objection of the district attorney was sustained and upon his motion the answer was stricken. This was error. However, Maushardt later testified without objection that Waltreus had told him they were acting under the supervision of the Long Beach Police Department. Maushardt was asked whether after James Guthrie had told him about the tape recording he had called Waltreus, and answered in the affirmative. He was asked to state the conversation, the district attorney objected and the objection was sustained. There was no error. At that stage of the proceedings it was immaterial what defendants might have said in their conversation.

Waltreus was asked to state what was said in his first conversation with Maushardt on the telephone. The objection of the district attorney was sustained. He was questioned whether Maushardt asked him at that time if he could fix a license through the Department of Alcoholic Beverage Control. The objection of the district attorney was sustained. Waltreus testified that Maushardt at that time said he wished to speak to him. When the witness started to tell what else Maushardt said, the objection of the district attorney was sustained. Waltreus testified that he had asked Maushardt to aid him in the Guthrie matter, but when asked what he told Maushardt

the district attorney's objection was sustained. When questioned as to the conversation he and Maushardt had with the Guthries in their meeting Waltreus testified: "The substance of the conversation was that we were discussing the fixing of a liquor license for the Alcoholic Beverage Control Board, *and that we were acting upon advice from the Police Department,* and attempting to go along with the story that we could actually do such a thing, in order to get them to make an offering of money." It may be assumed that the part of the conversation relating to the police department was solely between Waltreus and Maushardt. Waltreus testified that he told Inspector Thiele that Maushardt had been approached by the Guthries and was advised by Thiele to encourage the Guthries to offer a bribe. Immediately after talking with Inspector Thiele, when the entrapment of the Guthries was discussed, Waltreus had a talk with Maushardt. Arlene Sinn, called by the defendants, testified that in the early part of September 1959, as a cocktail waitress she served Maushardt and Waltreus. She had served Waltreus and James Guthrie on one occasion. She overheard none of their conversation. She was questioned whether she had engaged in conversation with Maushardt or Waltreus, answered in the affirmative and when asked to relate the conversation an objection of the district attorney was sustained. However, she was permitted to answer over the district attorney's objection that she heard Waltreus tell Maushardt that he (Waltreus) had just come from the Long Beach Police Department.

The substance of the claims of error relative to the foregoing rulings is that the defendants were frustrated in their efforts to prove that in the beginning of the affair Maushardt was informed by Waltreus of an arrangement made with the police department for the entrapment of the Guthries. While the objections of the district attorney were ill-founded and the court erred in sustaining them, it is clear that no prejudice was suffered by defendants or either of them. Waltreus testified explicitly as to his supposed agreement with the police department. Thiele testified to the plan proposed by Waltreus to entrap the Guthries. Waltreus solicited the assistance of Maushardt in whatever plan he had in mind which was either to endeavor to entrap the Guthries or to obtain $2,500 from them by false representations. If it had been true that Waltreus was working with the police department it is inconceivable he would not have advised Maushardt of that fact, inasmuch as he solicited the assistance of Maushardt in whatever

he was attempting to do. Waltreus could not have acted solely in the interest of law enforcement while Maushardt at the same time was planning to assist in defrauding the Guthries of $2,500. If the court had believed the testimony of Waltreus he would have been acquitted and Maushardt also would have been acquitted. Upon the evidence one could not have been innocent and the other guilty.

It may be recalled that when Maushardt was asked whether Waltreus had told him that he (Waltreus) was operating with the police department he answered in the affirmative, and although the answer was stricken, it clearly indicated to the court that Maushardt was relying upon the defense that he and Waltreus were acting in cooperation with the police department. Neither one had offered any other defense. This issue was fully tried. The court did not believe the testimony of the defendants, and was not impressed by their defense. It cannot be assumed that if Maushardt had been permitted to testify more fully as to his conversations with Waltreus, his testimony as to his motives would have differed from that of Waltreus, nor is it conceivable to us that the trial would have brought about a different result. Appellant was accorded a fair trial. No error was committed which would have affected the verdict.

The judgment and the order appealed from are affirmed.

Ford, J., and Files, J., concurred.