[Crim. No. 10336. Second Dist., Div. One. Mar. 8, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. KENNETH L. HUBER, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, William B. McKesson and Evelle J. Younger, District Attorneys, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Sidney M. Williams and Andrew Landay for Defendant and Respondent.

LILLIE, J.—Defendant was charged with driving while under the influence of intoxicating liquor in an unlawful manner resulting in bodily injury to another human being. (Veh. Code, § 23101.) The committing magistrate held him to answer; the superior court dismissed the charge under section 995, Penal Code. The People appeal from the order.

Around 2:20 a.m. on April 22, 1964, Sandra Silvers was involved in an automobile accident the result of which she sustained serious injury. Ten minutes later Officer Clark arrived at the scene and observed the two vehicles; there was damage to the left fender of each; he found Miss Silvers lying injured in a vehicle facing east on the northbound portion of La Cienega; he found defendant alone, unconscious behind the steering wheel of the other which, too, was facing east on the northbound portion of the street. Officer Hickey arrived at the scene around 2:50 a.m.; he examined the

physical evidence and determined therefrom the point of impact and concluded that the only way the accident could have happened was that defendant had been driving on the wrong side of the street. He testified that in defendant's vehicle there was an odor of alcoholic beverage. He left the scene of the accident around 3:30 a.m. and went to the U.C.L.A. Medical Center; he saw defendant around 4 a.m. and noticed a strong odor of alcohol emitting from his breath.

When brought to U.C.L.A. Medical Center defendant was unconscious; Dr. Levin, an intern, saw defendant at approximately 4 a.m.; he detected an aroma of alcohol about the presence of defendant when he examined him; while he was semiconscious, and without defendant's permission, Dr. Levin withdrew blood from his arm under medically accepted conditions, placed the sample in a tube (People's Exh. 1) and gave it to a nurse who handed it to Officer Hickey, which he testified was "the usual routine."

Officer Howe, Blood Alcohol Unit, Scientific Investigation Division, Police Department, twice ran a blood alcohol test on defendant's blood and obtained readings of .167 per cent and .164 per cent. In his opinion an individual with those blood alcohol readings would be under the influence of an intoxicating beverage at the time the blood sample was taken. He further testified that in his opinion all individuals would be under the influence at .15 per cent blood alcohol. According to the officer, assuming that a blood sample had been taken approximately one hour after the person had his last drink, the blood alcohol content at that point would be at a maximum; he stated that the percentage lost per hour is approximately .02.

In considering the propriety of a motion under section 995, Penal Code, this court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate, and if there is some evidence in support of the information, we will not inquire into its sufficiency. (*People* v. *Flanders,* 140 Cal.App.2d 765, 768 [296 P.2d 13].)

While the function of the magistrate is to weigh the evidence, resolve conflicts, and determine the credibility of witnesses, balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order. (*People* v. *Jackson,* 146 Cal.App.2d 553, 556 [303 P.2d 767]; *Perry* v. *Superior Court,* 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].) The record shows: ". . . (1) that the defendant drove a vehicle on the public highway [defendant, sole occu-

pant in the car, was found behind the steering wheel immediately after the accident]; (2) that he was then and there under the influence of intoxicating liquor [at the scene of the accident there was an odor of alcoholic beverage in defendant's car and almost two hours after the accident an odor of alcohol emitted from his breath and was detected about his person; the results of the blood test indicate he was under the influence of intoxicating liquor two hours after the accident; and an investigation of the accident shows that defendant was driving on the wrong side of the road when the impact occurred]; (3) that he did some act forbidden by law or neglected a duty imposed by law in the driving of such vehicle [the point of impact, determined from the physical evidence, established that defendant had been driving on the wrong side of the road just before the accident]; and (4) that such act or neglect proximately caused bodily injury to a person other than himself [Miss Silvers suffered a brain concussion and severe injuries to her leg]." (*People* v. *Clark*, 202 Cal.App.2d 513, 516 [20 Cal.Rptr. 803].)

While the sample was withdrawn in a medically approved manner by a doctor in a hospital, defendant's condition was such that his consent could not be, and was not, obtained. The officer had no search warrant and defendant was not then under arrest; there is no evidence relative to when defendant was arrested. Dr. Levin attended him as his physician, but the facts indicate that when he took the sample he was acting as an agent of law enforcement officers. After making an investigation at the scene, Officer Hickey, having reasonable cause to believe that defendant drove on the wrong side of the road causing the accident and was then under the influence of intoxicating liquor, went to the hospital where he saw him at approximately 4 a.m. An odor of alcohol was emitting from defendant's breath. After the officer's arrival and in his presence, Dr. Levin withdrew the blood sample and placed it in a tube which was given to Officer Hickey. There is no evidence that the sample was taken to aid the treatment of defendant or to save his life. The only reasonable inference is that Dr. Levin, an employee of a state agency, withdrew the blood at the instance of the officer for analysis for presentation to the court, and in so doing acted as his agent.

The crucial point is whether the result of an analysis of a blood sample taken from defendant while semiconscious, without his consent and in the absence of an arrest, must be excluded because the withdrawal of the blood constituted

an unlawful search and seizure. In dismissing the charge the superior court said, "the People have not proved that the taking of this blood sample was incidental to an unlawful [*sic*] arrest." Appellant argues that an arrest was not necessary, for under federal and state authorities the "emergency" and "exceptional circumstances" present herein justify the action of the police.

The United States Supreme Court in *Johnson* v. *United States* (1948) 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], recognized that under certain "exceptional circumstances," among them, threatened destruction of evidence, law enforcement officers have the right to conduct a search and seizure without a warrant, without consent and without the same being incident to an arrest. In *Johnson, supra,* narcotic agents detected a strong odor of burning opium coming from a room; without knowing the occupant they knocked on the door which defendant opened after some delay; they entered, told her to consider herself under arrest and without a search warrant or consent, searched the room; they seized opium and a warm smoking apparatus. The search and seizure could not be justified as having been incidental to an arrest for the court declared the arrest to be unlawful; then it said that in the absence of "exceptional circumstances" the search and seizure without a warrant, consent or arrest were not lawful. "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to the court. . . ." (Pp. 14-15.) In *McDonald* v. *United States* (1948) 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153], the court cited the *Johnson* case and while it held there were no "exceptional circumstances" in the record to justify entry of a room and seizure of lottery

paraphernalia without a warrant, it said: "Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances, as was held in *Johnson* v. *United States, supra*. . . .

"Here, as in *Johnson* v. *United States* . . . the defendant was not fleeing or seeking to escape. Officers were there to apprehend petitioners in case they tried to leave. Nor was the property in the process of destruction nor as likely to be destroyed as the opium paraphernalia in the *Johnson* case. . . . We cannot be true to that constitutional requirement (Fourth Amendment) and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." (Pp. 454-456.) Similarly in *United States* v. *Jeffers* (1951) 342 U.S. 48 [72 S.Ct. 93, 96 L.Ed. 59], the court held the search and seizure of contraband, without a warrant or consent, not to be incident to defendant's arrest the next day, and found no "exceptional circumstances" to justify the action of the officers. "Only where incident to a valid arrest, *United States* v. *Rabinowitz* (1950) 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], or in 'exceptional circumstances,' *Johnson* v. *United States* (1948) 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], may an exemption lie, . . . They [occupants] were not even present when the entry, search and seizure were conducted; nor were exceptional circumstances present to justify the action of the officers. There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized. In fact, the officers admit they could have easily prevented any such destruction or removal by merely guarding the door." (Pp. 51-52.) In *Chapman* v. *United States* (1961) 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828], law enforcement officers with consent of the landlord entered and searched defendant's house in his absence, seizing an unregistered distillery and gallons of mash. No reason having been given by the officers for not obtaining a search warrant except inconvenience and slight delay, the court citing *Johnson, supra,* stated that there were no "exceptional circumstances" to justify the officers' actions. "Here, as in that case [*Johnson*], 'No reason is offered for not obtaining a search warrant . . . No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or con-

traband was threatened with removal or destruction, . . .''
(P. 615.)

California cases, too, have recognized the right of police officers in an emergency to make a search without a warrant, without consent, and not as an incident to arrest. In *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721], the officers, suspecting that defendant's automobile had been used in a burglary, went to her apartment and knocked on the door but received no response; they heard moans and groans from within as if someone were in distress. They entered, looked around and found no one, then saw a radio they believed to have been stolen and took its serial number. On the basis of this information, they obtained a search warrant. Later they returned to the apartment, arrested defendant, and seized the radio. The court held the original entry to be lawful, thus the warrant based upon their observations in the apartment was valid. ''Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose. [Citations.]'' (P. 377.) A similar holding is found in *People* v. *Gomez* (1964) 229 Cal.App.2d 781, 783 [40 Cal.Rptr. 616]. Defendant, found unconscious in a parked car, was moved by ambulance to the Emergency Hospital; he was frothing at the mouth and appeared to be having convulsions; his breathing had stopped three or four times. While defendant was being treated, the officer went through defendant's pockets to find his identity and what might be wrong with him. After learning his identity from defendant's wallet, the officer looked in a shirt pocket and found a bindle of heroin. Relying on *People* v. *Roberts, supra,* the court held that the officer acted reasonably under the circumstances.

The expression of the United States Supreme Court in *Chapman* v. *United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L. Ed.2d 828], citing *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], was recognized in *People* v. *Morris,* 211 Cal.App.2d 274 [27 Cal.Rptr. 129]. In that case, looking through the window of a house, officers saw defendants retreating to the rear carrying a wrapped brown paper and a spoon; they entered the house, pushed back defendants, examined the objects and arrested the defendants. The evidence was undisputed that defendants' actions indicated they were about to take flight in possession of narcotics; the court

found that the officers had reasonable cause to believe defendants were guilty of criminal conduct. Said the court at pages 278-279: "This application of the rules regarding search and seizure in no way conflicts with the recent expressions of the United States Supreme Court on the subject in *Chapman* v. *United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828]. Although as a general rule a residence may not be searched without a search warrant unless the search is incident to a lawful arrest, there are situations in which this rule does not apply to limit or circumscribe reasonable and necessary action by officers of the law. The court in the *Chapman* case, at page 615, quoting in part from *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], stated:

" 'Here, as in that case, "No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers· and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. *No suspect was fleeing or likely to take flight.* The search was of permanent premises, not of a movable vehicle. *No evidence or contraband was threatened with removal or destruction,* . . ." ' " (Italics added.)

"In the instant case the evidence is undisputed that appellants' actions were such as to indicate to the officers that these suspects were about to take flight in possession of materials which the officer had good reason to believe consisted of that form of contraband which has become such a scourge to our society that every thoughtful and law-abiding citizen is alarmed and distressed by its dreadful implications."

█ We view the circumstances surrounding the withdrawal of the blood sample in the light of the known facts "that the intoxicating effect of alcohol diminishes with the passage of time" (*In re Martin,* 58 Cal.2d 509, 512 [24 Cal. Rptr. 833, 374 P.2d 801]), the "scientific reliability of blood alcohol test", "to exonerate, as well as to convict" (*People* v. *Duroncelay,* 48 Cal.2d 766, 772 [312 P.2d 690]), and "the imperative public interest involved" (*People* v. *Duroncelay,* 48 Cal.2d 766, 770-771 [312 P.2d 690]), as establishing such "emergency" and "exceptional circumstances" as would justify the officer's conduct in the absence of a warrant, consent or arrest. While the blood sample was not withdrawn for the purpose of treating defendant, saving his life or for his direct benefit, it was taken for the purpose of reducing the alcohol in defendant's blood to possession—to protect the

alcohol content in the blood from destruction and preserve it for presentation to the court. There was no other way to prevent the disappearance or destruction of the evidence as in *United States* v. *Jeffers,* 342 U.S. 48, 52 [72 S.Ct. 93, 96 L.Ed. 59]. In *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], after declaring that ''No evidence . . . was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear'', the court commented, ''But they [opium fumes] were not capable at any time of being reduced to possession for presentation to the court.'' (P. 15.) Here while the alcohol in the blood in time would disappear and actually was in ''the process of destruction'' (*McDonald* v. *United States,* 335 U.S. 451, 455 [69 S.Ct. 191, 93 L.Ed. 153]), it could be, and was, reduced to possession. After his investigation of the accident Officer Hickey had reasonable cause to believe that defendant had caused the collision by driving his car on the wrong side of the road and at the time was under the influence of intoxicating liquor. When he arrived at the hospital it was already 4 a.m., almost two hours after the accident. Thus, by the time he prepared the necessary papers, submitted the matter to a magistrate, obtained a search warrant and returned to the hospital, the alcohol in the blood would, in all probability, have greatly diminished, if not entirely disappeared; the usefulness of the blood sample would have been lost. ''It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time; hence, the probative value of a blood test diminishes as well. In a short period of time an intoxicated person may 'sober up' sufficiently to negate the materiality of a blood test where the sample has not been timely withdrawn.'' (*In re Martin,* 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801].) There were indeed ''compelling reasons to justify the absence of a search warrant''; and ''the exigencies of the situation made [the officer's] course imperative.'' (*McDonald* v. *United States, supra,* pp. 454-456.) The court in *People* v. *Duroncelay,* 48 Cal.2d 766, 772 [312 P.2d 690], points up the public interest affected: ''The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol on drivers. (See National Safety Council Accident Facts— 1955, pp. 43-71.) So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard

to the safety of the public. The extraction of blood for testing purposes is, of course, an experience which, every day, many undergo without hardship or ill effects. . . ." (See also *People* v. *Pack,* 199 Cal.App.2d 857, 863 [19 Cal.Rptr. 186].)

We have found no California authority which specifically upholds the withdrawal of blood under these facts on the theory of "emergency" or "exceptional circumstances." However, the "scientific reliability of blood alcohol tests" and "the imperative public interest involved" are the same here as in the *Duroncelay* case, *supra,* p. 772, where the extraction of blood was made incident to a lawful arrest; and because of the necessity for timely action to preserve the alcohol content of the blood *(In re Martin,* 58 Cal.2d 509, 512 [24 Cal. Rptr. 833, 374 P.2d 801]), we deem this to be a case in which police action was justified. The admission of the evidence does not violate defendant's privilege against self-incrimination. *(People* v. *Haeussler,* 41 Cal.2d 252 [260 P.2d 8].) The taking of his blood for an alcohol test in a medically approved manner does not offend "a sense of justice" *(Brown* v. *Mississippi,* 297 U.S. 278, 285-286 [56 S.Ct. 461, 80 L.Ed. 682]), nor does it constitute brutality or shock the conscience, or deprive defendant of due process of law under the rule applied in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]. *(Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448] [blood for an alcohol test was taken by a doctor while defendant was unconscious].)

Our attention has been called to *People* v. *Knox,* 178 Cal. App.2d 502 [3 Cal.Rptr. 70], and *People* v. *Pack,* 199 Cal. App.2d 857 [19 Cal.Rptr. 186]. The *Knox* case was decided in 1960; it held the taking of a blood sample without defendant's consent or a warrant not to be justified as incident to an arrest which occurred nine days later. The court did not therein consider whether "exceptional circumstances" were present to sustain the propriety of the withdrawal of the blood. However, in 1962, *People* v. *Pack,* 199 Cal.App.2d 857 [19 Cal.Rptr. 186], was decided on facts almost identical to these at bar. There was no evidence that defendant was ever arrested. The court held that the taking of defendant's blood for the Highway Patrol while he was unconscious at the hospital did not constitute an unreasonable search and seizure in violation of his constitutional rights even though there was no arrest, because the officer had reasonable grounds to believe that defendant may have committed a felony. As in the instant case, the officers after investigating the accident, had

reasonable grounds to believe that defendant drove on the wrong side of the highway thereby causing the collision, and that he was under the influence of alcohol at the time. Said the court at pages 864-865: "Therefore there was probable cause to believe that a felony had been committed. Hence the obtaining of a blood sample from defendant was not an unlawful search. Therefore the sample (Exhibit 5) together with its analysis was properly admitted in evidence." However, the court in the *Pack* case followed the California rule that " 'A search or seizure may be justified even though it is in no way related to an arrest' " and " 'The real criterion as to the reasonableness of the search is whether or not . . . under the facts, the police officer has reasonable grounds to believe that defendant may have committed a felony.' " (See also, *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531]; *Willson* v. *Superior Court of San Diego County*, 46 Cal.2d 291 [294 P.2d 36].) While probable cause has been established in the instant case, in light of *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933] (see *Hurst* v. *California*, 211 F.Supp. 387, 392-393; *California* v. *Hurst*, 325 F.2d 891, 896-898), we rely primarily upon the "emergency" and "exceptional circumstances" rule applied in both federal and state courts.

The order is reversed.

Wood, P. J., and Fourt, J., concurred.