[Crim. No. 2923.    Fourth Dist., Div. One.    Sept. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CECILIA
ELEANOR GLASS, Defendant and Appellant.

Launer, Chaffee & Hanna and Garald J. Orman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was convicted of the offenses of manslaughter in driving a vehicle, with gross negligence; was granted probation; and appeals.

Although contradicted in part, there is evidence showing: Defendant, while under the influence of intoxicating liquor, drove an automobile westerly along Orangethorpe Avenue, in

the City of Placentia, at between 60 and 65 miles per hour. The posted speed limit was 45 miles per hour. At the intersection of Orangethorpe and Melrose Avenues, a truck operated by a street repair crew was parked perpendicular to the north curb of Orangethorpe. Three of the crew were engaged in repaving a portion of the street that had been excavated for the installation of gas lines. Similar repair work was being done on the south side of Orangethorpe. Because of this work the portion of the street available for use was narrowed to 21 feet. Defendant's car collided with the rear of the truck; struck the three men working in the street, killing two of them; struck a telephone pole; and stopped. The distance from point of impact to the telephone pole was approximately 160 feet. The car left no tire marks before the impact. Defendant ran a red light at the intersection of Orangethorope and Dowling Avenues, which was easterly of the intersection where the accident happened. Defendant sustained injuries resulting in a retrograde amnesia with consequent loss of memory of the events at the time in question. There also was evidence, although contradicted, that no flagman was present warning of the hazard created by the repair work upon the street, no speed reduction signs had been posted, and there were no barricades easterly of the construction site warning of impending danger or directing traffic out of the danger zone.

At the trial defendant contended, among other things, the accident was the sole result of the unsafe condition of the intersection; claimed she was not guilty of gross negligence; and urged, in any event, the punishment imposed should not exceed imprisonment in the county jail.

On appeal defendant contends her conviction should be set aside because of alleged errors by the trial court and alleged misconduct of the district attorney. We have concluded some of these contentions are meritorious and require a reversal.

██ The court sustained objections (1) to the admission in evidence of a manual of warning signs, lights and devices to be used in the performance of work upon highways, compiled by the Department of Public Works pursuant to the provisions of section 21406 of the Vehicle Code; and (2) to the testimony of a district traffic engineer of the Division of Highways of the State of California, who was qualified as an expert respecting the use of safety measures in the performance of repair and construction work on streets and highways, that would have tended to show the safety precautions taken

in connection with the repair work being performed at the intersection in question did not comply with the standard prescribed by the custom and useage of those engaged in the business of repairing and constructing streets and highways.

Defendant urged admission of the foregoing manual and testimony as evidence tending to prove the intersection where the accident occurred was not in a safe condition at the time in question because of the failure to adopt safety measures which would have warned oncoming traffic of the existence of a dangerous condition; would have directed a reduction of speed; would have guided the traffic around the obstructions in the street; and would have provided wider traffic lanes. The district attorney contended such evidence was immaterial because it went to the question of contributory negligence, which is not an issue in a manslaughter case. Defendant contends, among other things, the evidence was material to the issue of causation and the punishment to be imposed. The trial court expressed the belief evidence tending to prove the intersection was in an unsafe condition was material to the issue of causation; erroneously concluded, however, the manual prescribing the type of warning signs, lights and devices to be placed on the highway by those engaged in performing work thereon, was hearsay; sustained the objection thereto on this ground; misconceived the purport of the offered testimony of the expert, believing it would go solely to the ultimate fact or ultimate issue at hand; also erroneously concluded such testimony was inadmissible; and, apparently for this reason, sustained the objection to its admission.

The purport of the offered testimony of the engineer was two fold: (1) it would have tended to establish the custom or usage respecting the requirements of safety measures in the business of road repair and construction; and (2) would have included an opinion on the question whether the safety measures taken by the construction contractor repairing the street in question conformed to the custom and usage in the trade.

A prosecution witness, qualified as a safety engineer, testified respecting the contents of safety orders imposed upon employers engaged in the repair or construction of streets and highways; and expressed the opinion the construction site was safe.

At this juncture it is pertinent to note the offer of proof by defendant's attorney lacked that precision which should be

its prime attribute. On the other hand, in the course of his argument, at various times and in various ways, counsel in piecemeal fashion asserted the nature, extent and purpose of the testimony he expected to elicit from the expert. A consideration of the record as a whole dictates the conclusion the court determined no part of the offered testimony, or of the manual, was admissible.

The manual was prepared by the Department of Public Works pursuant to the provisions of Vehicle Code section 21406 which directs it to "determine and publicize the specifications for uniform types of warning signs, lights and devices to be placed upon a highway by any person engaged in performing work which interferes with or endangers the safe movement of traffic upon such highway"; and provides that only those signs, lights and devices provided for in such manual shall be placed upon a highway to warn traffic of work which is being performed thereon. The manual did not constitute hearsay testimony insofar as it contained the specifications respecting the warning devices to be placed on highways. It was admissible as evidence on the issue whether the construction site was hazardous and unsafe. (See *Tankersley* v. *Low & Watson Constr. Co.,* 166 Cal.App.2d 815, 820 [333 P.2d 765].) If the jury found the construction site was unsafe it could have concluded this condition was the sole cause of the accident. Thus, the condition of the construction site was a circumstance material to the issue of causation. Granted the negligence of the construction contractor was not an issue in the case, whether his failure to comply with accepted standards resulted in an unsafe condition was an issue. In addition, even though the jury found defendant's conduct was a cause of the accident, it could have concluded the concurrence of other causes, the lack of adequate warnings and the resultant unsafe condition of the highway at the construction site were circumstances mitigating the punishment to be imposed, and justified a recommendation of imprisonment in the county jail pursuant to the authority conferred by Penal Code section 193. Such a recommendation would have reduced the offense from a felony to a misdemeanor. (Pen. Code, § 193.)

The offered testimony of the safety expert likewise was material to the issues of causation and punishment.

■ The testimony of experts is admissible to show recognized and accepted safety standards and practices in their profession, trade or business (*Smith* v. *Lockheed Propulsion Co.,* 247 Cal.App.2d 774, 783 [56 Cal.Rptr. 128]; *Rosenberg* v.

*Goldstein,* 247 Cal.App.2d 25, 29 [55 Cal.Rptr. 306] ; *Reynolds* v. *Natural Gas Equipment, Inc.,* 184 Cal.App.2d 724, 739 [7 Cal.Rptr. 879] ) ; and ''is not objectionable because it embraces the ultimate issue to be decided by the trier of fact.'' (Evid. Code, § 805 ; *People* v. *Cole,* 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435] ; *Smith* v. *Lockheed Propulsion Co., supra,* 247 Cal.App.2d 774, 783.)

In the case at bench, counsel for defendant suggested the expert would testify conformance to accepted standards would require road construction and speed reduction signs of a particular type and measurement at specified distances from the construction site ; also that compliance with accepted safety standards would proscribe construction work on both sides of a street at the same time ; and that, in his opinion, because of designated omissions or practices, the construction work in question was not performed in accordance with accepted safety standards. Such an opinion is not objectionable even though in a measure it embraces a conclusion on the ultimate issue whether the construction site and its approaches were in a safe condition.

The jury began its deliberations at 9 :40 a.m. on March 23, 1967 ; returned to the court room on two different occasions requesting instructions and the reading of testimony ; and concluded its deliberations with a guilty verdict at 11 :06 a.m. on the following day. On the first occasion when the jury returned to the court room it asked permission to take the instructions into the jury room. The court refused the request ; stated, under the law, this could not be done in a criminal case ; and also stated the jury might request a rereading of the instructions and it should not hesitate to do so if there was any need for some rereading. The court's concept of the law in the premises was incorrect. A jury may take with them to the jury room the written instructions given (Pen. Code, § 1137), but whether they should be permitted to do so is a matter subject to the court's discretion. (*People* v. *Dunlop,* 27 Cal.App. 460, 470 [150 P. 389].)

However, the record dictates the conclusion the court did not exercise its discretion in the premises. Instead, it relied upon its erroneous concept of the law. This was error.

On the same occasion, the jury asked the question :
''If not guilty, is a person free of all charges?'' In reply the court made the following statement : ''In this case, there are, as to each count, there are several verdicts possible.

"One, felony manslaughter, which would involve gross negligence; two, misdemeanor manslaughter, which although not charged in the Information, is a lesser included offense, and then the other verdict would be three, not guilty. A not guilty verdict would mean that the person was not guilty of the charged offense, but also of the lesser included offense. In other words, all of the included charges." The oral instruction in response to the jury's inquiry was erroneous. One of four, rather than of three, possible verdicts might have been rendered. The court omitted reference to the verdict finding defendant guilty of the offense of manslaughter with gross negligence and recommending punishment by imprisonment in the county jail. Such a verdict would have found defendant guilty of a misdemeanor rather than a felony, as the trial judge was required to accept the recommendation. (Pen. Code, § 193.) The jury had been given four forms of verdict but the oral instruction of the court, in effect, eliminated their use of the form recommending imprisonment in the county jail.

One of the written instructions read to the jurors advised them they might recommend punishment should be by imprisonment in the county jail and to render a verdict accordingly. However, the fact the court refused to permit the jurors to take the written instructions into the jury room and the subsequent oral instruction of the court respecting the verdicts they might render negated the effect of the prior reading of the written instruction respecting a county jail sentence recommendation.

The errors of the court in the rejection of testimony offered by defendant, in failing to exercise its discretion in passing upon the request of the jury to have the written instructions, and in orally instructing the jurors they might render one of three rather than one of four possible verdicts, were prejudicial when measured by the rule stated in *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

In light of a new trial, we deem it appropriate to pass upon defendant's further contention the court erred in admitting in evidence the results of an analysis of a sample of blood taken from defendant without her consent and without a search warrant. After the accident defendant was removed to a hospital where, upon direction of the police, a sample of blood was taken from her. She had been taken to the hospital because of injuries sustained in the accident. One of the investigating officers was present at the time. When defendant

was removed from her automobile this officer, and others, noted the odor of alcohol on her breath. The trial court found there was probable cause to believe defendant had committed a felony. The evidence supports this conclusion. When the blood sample was taken defendant had not been arrested. A warrant authorizing taking the blood sample had not been issued. However, under the circumstances, it was proper to take the blood sample and to admit the evidence developed by its analysis which supported the conclusion she was under the influence of intoxicating liquor at the time of the accident. This conclusion is dictated by the decisions in *Schmerber* v. *California*, 384 U.S. 757, 768-771 [16 L.Ed.2d 908, 918-920, 86 S.Ct. 1826, 1834-1836]; *McDonald* v. *Justice Court*, 249 Cal. App.2d 960, 963 [58 Cal.Rptr. 29], and *People* v. *Bustos*, 247 Cal.App.2d 422, 424 [55 Cal.Rptr. 603].

The judgment is reversed and a new trial is ordered.

Brown (Gerald), P. J., and Whelan, J., concurred.