[L.A. No. 29934. In Bank. Mar. 3, 1972.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
ALLAN FOSTER HAWKINS, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Vizzard, Baker, Sullivan, McFarland & Long and Richard M. Long for Real Party in Interest.

**OPINION**

**SULLIVAN, J.**—Defendant (real party in interest) Allan Foster Hawkins was charged by information with one count of vehicle manslaughter (Pen. Code, § 192, subd. (3)(a)) and one count of felony drunk driving (Veh. Code, § 23101). He moved pursuant to section 1538.5 of the Penal Code to suppress as evidence the results of a blood-alcohol test on the ground that they were the product of an illegal search and seizure. Defendant's motion was granted and the People seek review by writ of mandate. (Pen. Code, § 1538.5, subd. (o).)[1]

The pertinent facts giving rise to the motion to suppress are as follows: On the evening of June 21, 1970, defendant, accompanied by his sister, was driving a pickup truck along Allen Road in Kern County. At the same time Robert Craig accompanied by his wife and children was driving his station wagon along Rosedale Highway, a through highway. (See Veh. Code, § 600.) Without stopping or slowing down at the stop sign, defendant drove his truck into the intersection and collided with the Craig vehicle. Defendant's sister was killed and Mrs. Craig was seriously injured.

Officers of the California Highway Patrol arrived upon the scene within 10 minutes. They found defendant standing near the station wagon in a dazed condition, eyes bloodshot, shirt off, back and head bloody from injuries. Officer Hernandez testified that defendant's breath smelled of alcoholic beverages and that there were three beer cans in defendant's truck, two full and one empty. Due to defendant's physical condition, he was not given a field sobriety test, but placed in an ambulance along with Mrs. Craig and sent to the Kern General Hospital for medical attention.

At the hospital defendant and Mrs. Craig were transferred to the emergency room. After completing their investigation at the scene of the

---

[1]Hereafter, unless otherwise indicated, all section references are to the Penal Code.

accident, the two officers also proceeded to the hospital. While defendant was lying in the emergency room awaiting treatment, Officer Apsit approached defendant and asked that he consent to a blood-alcohol test for intoxication. Defendant apparently agreed and signed a written consent. A blood sample was thereupon taken in a medically approved manner. Several hours later defendant was released from the hospital. At no time was defendant placed under arrest.

The result of the blood-alcohol test showed that defendant's blood contained 203 milligrams percent alcohol. Several weeks after the accident a complaint was filed in the Bakersfield Municipal Court charging defendant with the above-mentioned felonies. Defendant voluntarily surrendered to the authorities. At the preliminary hearing, the magistrate found that defendant had consented to the blood-alcohol test, denied his motion to suppress the results of the test and held him to answer.

Defendant renewed his motion to suppress in the superior court. (§ 1538.5, subd. (i).)[2] At the special hearing his motion was submitted on the transcript of the preliminary hearing, supplemented by defendant's testimony. The People conceded that the only ground upon which they sought to justify the seizure of defendant's blood was his written consent.[3] The trial judge found that defendant's written consent was not free and voluntary and granted the motion to suppress.[4] The People thereupon filed the instant petition for a writ of mandate. (§ 1538.5, subd. (o).)

---

[2]Defendant also moved to dismiss the count of vehicle manslaughter on the ground that there was insufficient evidence to support a finding of gross negligence and moved in the alternative that the felony-manslaughter proceedings be reduced to a misdemeanor. The trial court denied both motions.

[3]"Mr. Vander Noor [Prosecutor]: Your Honor, I can shorten this up considerably. I will concede that when you take a blood test you are intruding into that body and, therefore, you are seizing evidence. So, we have a search and seizure problem. . . . [Par.] I will also concede that Mr. Hawkins at no time was placed under arrest at the scene or at the hospital. Consequently, the justification for the admissibility of the blood test does not rest on the search warrant [there being none] and it does not rest on incident to lawful arrest. . . . [Par.] The basis under which we are offering this as a product of a legal search and seizure is simply that according to the evidence adduced at the preliminary hearing, this man was asked to take a blood test. He said he would and he signed a consent slip to that effect. . . . Since in a nut shell the only basis upon which the prosecution can offer this, since there was no arrest, was no search warrant, is consent. . . . [Pars.] So, I submit to the Court that in this case the pivotal decision need only be was there a free and voluntary consent. I will stipulate with counsel that there was no arrest, there was no search warrant . . . ."

[4]The judge stated: "The defendant was in the emergency room being administered first aid from a severe accident which caused the death of his sister, as well as others. He was lying on his stomach with blood all over and had just regained consciousness. He couldn't even read the paper because he had blood in his eyes and thought it was an authorization for treatment; the paper, of course, being the signed consent. Suffer-

The People concede, as indeed they must, that there is substantial evidence in the record to support the trial court's findings that defendant's written consent to the blood-alcohol test was not freely and voluntarily given. They contend, however, that the taking of a blood sample in a medically approved manner but without the consent of the subject is not violative of his right to be secure against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution where there is probable cause to arrest at the time the sample is taken, even though the taking of the sample is not pursuant to a search warrant or incident to an arrest. We disagree. Accordingly we deny the People's petition for the writ.

■ It is clear that the Fourth Amendment does not bar a compulsory seizure, without a warrant, of a person's blood for the purposes of a blood alcohol test to determine intoxication, provided that the taking of the sample is done in a medically approved manner, is incident to a lawful arrest, and is based upon the reasonable belief that the person is intoxicated. (*Schmerber* v. *California* (1966) 384 U.S. 757, 766-772 [16 L.Ed.2d 908, 917-920, 86 S.Ct. 1826]; *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 771-772 [312 P.2d 690].) As previously indicated, the People claim, without any citation of authority, that such a seizure of a person's blood is lawful even when it is *not* incident to a lawful arrest. They argue that the real thrust of *Schmerber* and *Duroncelay* is that intrusion into the privacy of a person's body depends upon a clear indication of his intoxication and that his arrest is a mere formality. They point to the following language in *Schmerber*: "The interests in human dignity and privacy which the Fourth Amendment protects forbids any such intrusion on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." (*Schmerber* v. *California, supra,* 384 U.S. 757, 769-770 [16 L.Ed.2d 908, 919].)

Contrary to the People's claim, *Schmerber's* approval of the compulsory seizure of blood is clearly grounded on the premise that it is incidental to a lawful arrest. "In this case, as will often be true when charges of driving under the influence of alcohol are pressed, these questions arise in the context of an arrest made by an officer without a warrant." (*Id.* at

---

ing from shock and injury, he does not remember even signing the paper or who talked to him, although he does admit seeing an officer leave the room. Under the facts adduced at the evidentiary hearing in Superior Court, this court finds it as a fact that this was not a free and voluntary consent and, therefore, the motion to suppress evidence, insofar as the results of the blood test are concerned, is hereby granted."

p. 768 [16 L.Ed.2d at p. 918].) "While early cases suggest that there is an unrestricted 'right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime,' [citations] the mere fact of a lawful arrest does not end our inquiry." (*Id.* at p. 769 [16 L.Ed.2d at p. 919].) "Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an *appropriate incident to petitioner's arrest.*" (*Id.* at p. 771 [16 L.Ed. 2d at p. 920], italics added.) Similarly in *Duroncelay,* we made it perfectly clear that the seizure of the blood sample could only be justified as "incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code." (*People* v. *Duroncelay, supra,* 48 Cal.2d 766, 772.)

The People favor us with no authority supportive of their startling proposition that in this context a lawful arrest is but a mere formality. Indeed this proposition runs directly counter to the law on search and seizure developed by the United States Supreme Court. "[T]his Court has never sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end. Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' *Agnello* v. *United States,* 269 U.S. 20, 33, for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police . . . .' *Wong Sun* v. *United States,* 371 U.S. 471, 481-482. 'Over and over again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' *United States* v. *Jeffers,* 342 U.S. 48, 51, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Fns. omitted.) (*Katz* v. *United States* (1967) 389 U.S. 347, 356-357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507].)

In *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the United States Supreme Court reiterated the doctrine that searches and seizures without warrants are per se unreasonable under the Fourth Amendment even if there is probable cause to search, except in rare situations, and traced the history of one of these rare situations, namely searches incident to a lawful arrest. The Supreme Court pointed out that this exception emerged in dictum in *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341] and gradually wound its way to the dignity of a holding. The legitimate extent of a search incident to a lawful

arrest followed an unclear and apparently inconsistent path until *Chimel* where the court unequivocally defined the purpose and extent of searches incident to a lawful arrest. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel* v. *California, supra,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 694].)

In *Schmerber,* the Supreme Court unequivocally stated that even a lawful arrest would not in itself justify a seizure of blood without a warrant, unless there was in addition a "clear indication" that a blood-alcohol test will reveal intoxication. The court indicated that a more stringent test was applicable because of the great interest in protecting the human body from intrusion. In the light of the clear and consistent holdings of the high court in this area, it would indeed be incongruous to say that absent exigent circumstances an intrusion without a warrant into a person's home is per se unreasonable even though the authorities have probable cause to believe it contains contraband or evidence of crime, and to reason at the same time from the same legal premises that such an intrusion into his physical body is constitutionally permissible merely if they have probable cause to believe it contains evidence of his intoxication.

■ The Supreme Court has made it abundantly clear that the burden is on the People to show an overwhelming need that would justify a search without a warrant. "The exceptions [to the requirement of a warrant] are 'jealously and carefully drawn,' [*Jones* v. *United States,* 357 U.S. 493, 499] and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' [*McDonald* v. *United States,* 335 U.S. 451, 456.] '[T]he burden is on those seeking the exemption to show the need for it.' [*United States* v. *Jeffers,* 342 U.S. 48, 51.]" (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 455 [29 L.Ed.2d 564, 576, 91 S.Ct. 2022].)

As we previously stated, the People attempt to meet this burden, by claiming that arrest is merely a formality, a ritualistic incantation of words, as it were, that in no way goes to the substance of the situation. At the same time the People argue that out of a humane consideration for the condition of the injured motorist, it is normal and proper police procedure not to arrest him until after the results of the blood-alcohol test are received.

We are at a loss to determine how a meaningless ritual of words is at the same time so great a burden that it is inhumane to inflict this ritual upon an injured person. At any rate, the burden was never inflicted in the case at bench, since defendant was never arrested.[5]

We find it instructive at this point to consider the legislative purpose underlying the California "implied consent" law. (Veh. Code, § 13353.)[6] Although it is clear under *Schmerber* that a person who has been lawfully arrested may have a blood sample forcibly removed without his consent, provided it is done in a reasonable, medically approved manner and provided further that the arresting officer had probable cause to believe the arrestee was intoxicated, nevertheless such an episode remains an unpleasant, undignified and undesirable one.

---

[5]The People also urge, though not very strongly, that the seizure in this case can be justified as incident to lawful "arrest," which they equate with defendant's voluntary appearance in the municipal court, several weeks after the seizure. The United States Supreme Court has constantly reiterated the doctrine that "a search . . . remote in time or place from the arrest" (*Preston* v. *United States* (1964) 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881]) cannot be justified as incident to a lawful arrest. (*Chimel* v. *California, supra,* 395 U.S. 752.) "A search may be incident to an arrest ' "only if it is substantially contemporaneous with the arrest . . . ." ' " (*Vale* v. *Louisiana* (1970) 399 U.S. 30, 33 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969]. The People rely upon language in *People* v. *Duroncelay, supra,* 48 Cal.2d 766 to the effect that a search, even if it precedes the arrest, may be lawfully incident thereto. However, it is clear from subsequent California cases that such a rule is clearly subject to the overriding principle that a search to be lawfully incident to an arrest must be substantially contemporaneous therewith. (*People* v. *Henry* (1967) 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557]; *People* v. *Williams* (1967) 67 Cal.2d 226, 229 [60 Cal.Rptr. 472, 430 P.2d 30].)

[6]Section 13353, subdivision (a) provides: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood *if lawfully arrested* for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The *test shall be incidental to a lawful arrest* and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice.

"Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen.

"Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to or complete the test will result in the suspension of his privilege to operate a motor vehicle."

However, the shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response. By its enactment in 1966 of section 13353, the Legislature devised an additional or alternative method of compelling a person arrested for drunk driving to submit to a test for intoxication, by providing that such person will lose his automobile driver's license for a period of six months if he refuses to submit to a test for intoxication. ■ The effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion. It is noteworthy that in so doing, the Legislature took pains to condition its use upon a lawful arrest for driving under the influence of intoxicating liquor and upon the reasonable belief of the peace officer that the arrestee was in fact so driving.

The People have not even attempted to justify the taking of a blood sample from defendant under any of the "few specifically established and well-delineated exceptions" to the "basic constitutional rule in this area that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment'" (*Coolidge* v. *New Hampshire, supra,* 403 U.S. 443, 454-455 [29 L.Ed.2d 564, 576], quoting *Katz* v. *United States, supra,* 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]),[7] other than the "incident to lawful arrest" exception discussed earlier in this opinion.

---

[7]Indeed it is clear that the factual situation in the instant case does not involve the search for contraband in an automobile as in *Carroll* v. *United States* (1925) 267 U.S. 132, 153-159 [69 L.Ed. 543, 551-554, 45 S.Ct. 280] or *Chambers* v. *Maroney* (1959) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; or involve the hot pursuit of a fleeing felon as in *Warden* v. *Hayden* (1966) 387 U.S. 294, 298-300 [18 L.Ed.2d 782, 787-788, 87 S.Ct. 1642]; or the need to stop and frisk for weapons as in *Terry* v. *Ohio* (1967) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. Our esteemed colleague in dissent urges a theory, not presented by the People, that a warrantless, unconsented to seizure of blood not incident to an arrest may be upheld under United States Supreme Court decisions on the basis of an "emergency exception" because the alcohol dissipates rapidly from the blood thereby rapidly reducing the degree of intoxication. *Schmerber* itself, answers this contention. Since the intoxicated person is of necessity present when the blood is seized, there are ordinarily no exigent circumstances to prevent his arrest. *Schmerber* recognizes that once the suspect is arrested, a seizure incident thereto may be properly conducted without a warrant, since the rapid dissipation of the alcohol would make the delay involved in obtaining a search warrant unnecessary and unjustifiable. However, the rapid dissipation of the alcohol in the blood would in no way create an "emergency" rendering arrest unnecessary, since the person containing the alcohol is not fleeing nor otherwise unavailable.

The following cases have been brought to our attention: *People* v. *Pack* (1962) 199 Cal.App.2d 857 [19 Cal.Rptr. 186]; *People* v. *Huber* (1965) 232 Cal.App.2d 663 [43 Cal.Rptr. 65]; *People* v. *Bustos* (1966) 247 Cal.App.2d 422 [55 Cal.Rptr. 603]; *McDonald* v. *Justice Court* (1967) 249 Cal.App.2d 960 [58 Cal.Rptr. 29]; *People* v. *Glass* (1968) 266 Cal.App.2d 222 [71 Cal.Rptr. 858]. None of these cases, with the exception of *Huber*, were relied upon or even cited by the People. The

■ Since in the light of the foregoing authorities the People have failed to meet their burden of justifying the taking of a blood sample from defendant and since there is substantial evidence in the record to support the trial court's finding that defendant did not freely and voluntarily consent to the taking of his blood, it follows that the trial court quite correctly suppressed the results of the blood-alcohol test as having been obtained by an unlawful search and seizure.

The order to show cause is discharged and the petition for a peremptory writ of mandate is denied.

Wright, C. J., Peters, J., Tobriner, J., and Mosk, J., concurred.

**BURKE, J.,** Concurring and Dissenting.—With extreme reluctance I concur in the judgment. In my opinion, contrary to that of the majority, the People's theory for sustaining the taking of the blood sample would have been valid had it been timely presented and the trial court determined the circumstances to be those asserted by the People.

The People's theory is that in the absence of a warrant, consent, or an arrest the taking of Allen Hawkins' blood sample did not violate his right to be secure against unreasonable searches and seizures. The police officers had witnessed a clear indication of his intoxication at the scene of the accident, and there was probable cause for Hawkins' arrest. Time had already elapsed in taking him to the hospital and there was ample justification for the police to have a blood sample taken by a doctor in a hospital.

The majority, in rejecting the theory, fail to give adequate recognition to the fact that an emergency was presented in that the delay necessary to obtain a warrant threatened the destruction of evidence since alcohol soon disappears from the blood. The theory, however, unfortunately was not presented in the municipal or superior court and for the reasons hereinafter stated may not be presented for the first time here. The record contains evidence that would have supported determinations that the recited circumstances existed,[1] and had the theory been urged below and the trial court made such determinations the taking of the blood sample

---

People cited *Huber* to support their sole argument that probable cause to arrest justified a warrantless, unconsented to seizure of blood not incident to an arrest and not to support the theory proposed by the dissent. To the extent that they are inconsistent with this opinion, the above cases are disapproved.

[1]Probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the person

was permissible under California and other state court decisions and clear implications in United States Supreme Court decisions since the evidence was in the process of destruction.[2]

In *Schmerber* v. *California*, 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], wherein the question whether the analysis of a blood test was the product of an unreasonable search and seizure arose in the context of a warrantless arrest, the Supreme Court, after noting that "such testing procedures . . . constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of [the Fourth] Amendment," stated that the considerations justifying searches incident to an arrest had little applicability with respect to searches involving intrusions beyond the body's surface and that before a blood test can be made there must be "a clear indication" of intoxication. In concluding that the officer was not required to obtain a search warrant before the test was made, the court stated, *"The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances threatened 'the destruction of evidence.' Preston* v. *United States,* 376 U.S. 364, 367. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.* Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest." (Italics added.) *Schmerber* further declared that the test chosen was reasonable—that blood tests are today "commonplace" and for most involve "virtually no risk, trauma, or pain"[3]—and that the test was performed in a reasonable manner—namely by a physician in a

---

is guilty of a crime. (*People* v. *Terry*, 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Cockrell*, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) Here it appears or may be inferred that before the blood sample was taken the officers were aware of facts indicating that Hawkins drove the pickup truck onto the highway without stopping or even slowing at the stop sign, a collision ensued resulting in death and injuries to others, Hawkins' breath smelled of alcoholic beverages, his eyes were bloodshot, his speech a little slow, he appeared dazed, and two full beer cans and one empty were in the pickup. The foregoing evidence would be sufficient to show both probable cause for Hawkins' arrest for felony drunk driving (Veh. Code, § 23101) and a clear indication he was intoxicated.

[2]The People rely in part upon the destruction of evidence exception to the rule that searches without a warrant are per se unreasonable subject to established exceptions. The majority thus err in stating that the People rely solely on the incident to an arrest exception.

[3]*Schmerber* stated (at p. 771 [16 L.Ed.2d at p. 920]) that the petitioner there was not "one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing" and that the court therefore need not

hospital. (See also *People* v. *Duroncelay,* 48 Cal.2d 766, 771-772 [312 P.2d 690].)

*Schmerber* did not explicitly state whether the emergency doctrine could be used to justify blood tests independent of an arrest, but courts in this state and others have expressly or implicitly employed that doctrine to justify such tests where the defendant was not arrested and neither a warrant nor consent was obtained. (*People* v. *Glass,* 266 Cal.App.2d 222, 228-229 [71 Cal.Rptr. 858]; *McDonald* v. *Justice Court,* 249 Cal.App.2d 960, 963-964 [58 Cal.Rptr. 29]; *People* v. *Huber,* 232 Cal.App.2d 663, 666 et seq. [43 Cal.Rptr. 65]; *People* v. *Pack,* 199 Cal.App.2d 857, 864-865 [19 Cal.Rptr. 186]; *State* v. *Mitchell* (Fla.) 245 So.2d 618, 621-623; *State* v. *Findlay,* 259 Iowa 733 [145 N.W.2d 650, 654-656]; see also *People* v. *Bustos,* 247 Cal.App.2d 422, 424-426 [55 Cal.Rptr. 603] [wherein court assumed that the custody necessary to the taking of blood amounts to an arrest].) In some of the cited cases the defendant was semiconscious or unconscious, but no less an emergency exists in a case such as this where the defendant has regained consciousness.

Support for upholding the taking of a blood sample under the circumstances heretofore recited is found by analogy to cases involving searches of movable vehicles stopped on the highway where there is probable cause to believe that they contain contraband. The rationale for sustaining such searches is that it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality in which the warrant must be sought. (*Coolidge* v. *New Hampshire,* 403 U.S. 443, 459-460 [29 L.Ed.2d 564, 579, 91 S.Ct. 2022]; *Chambers* v. *Maroney,* 399 U.S. 42, 48-51 [26 L.Ed.2d 419, 426-428, 90 S.Ct. 1975]; *Carroll* v. *United States,* 267 U.S. 132, 153-154 [69 L.Ed. 543, 551-552, 45 S.Ct. 280].) A similar rationale applies to blood samples under the recited circumstances for alcohol soon disappears from the blood (see, e.g., *Schmerber* v. *California,* *supra,* 384 U.S. 757, 770-771 [16 L.Ed.2d 908, 919-920]; *In re Martin,* 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801]; *People* v. *Huber,* *supra,* 232 Cal.App.2d 663, 670). Indeed, blood sampling under such circumstances may present a stronger case for dispensing with a warrant, since movable vehicles are at most only *very likely* to be unavailable for inspection at a later date, while the alcohol in a suspect's blood is *certain* to disappear. (See 79 Harv. L. Rev. 677, 678.)

Furthermore, the United States Supreme Court has repeatedly recognized that where evidence is in the process of destruction a warrantless search in the absence of an arrest may be justified. (See, e.g., *Vale* v. *Louisiana,* 399 U.S. 30, 34-35 [26 L.Ed.2d 409, 413-414, 90 S.Ct. 1969]; *Chapman*

decide whether such wishes would have to be respected. Here Hawkins makes no claim that he is among that few.

v. *United States,* 365 U.S. 610, 615 [5 L.Ed.2d 828, 832, 81 S.Ct. 776]; *McDonald* v. *United States,* 335 U.S. 451, 455 [93 L.Ed. 153, 158, 69 S.Ct. 191]; *Johnson* v. *United States,* 333 U.S. 10, 15 [92 L.Ed. 436, 441, 68 S.Ct. 367].)

The implied consent law (Veh. Code, § 13353) by its terms is inapplicable in the absence of an arrest. However, in enacting this law the Legislature did not intend to preempt the field of chemical sobriety tests by complete statutory regulation, and the admissibility of blood alcohol tests under established case law is not affected by the cited section. (See *People* v. *Wren,* 271 Cal.App.2d 788, 791-792 [76 Cal.Rptr. 673]; *People* v. *Fite,* 267 Cal.App.2d 685, 687-691 [73 Cal.Rptr. 666].)

Regrettably, however, the People failed in the lower courts to present the theory now urged. In the superior court the People conceded that the only ground upon which they sought to justify the search and seizure was consent. (See fn. 3 in majority opinion.) In the municipal court the People likewise relied upon such consent and also on other grounds not asserted here presumably because of their patent lack of merit.[4]

The People cannot for the first time assert their present theory in the instant mandamus proceeding since Hawkins, being entitled to assume that the theories advanced by the prosecutor constituted the only purported justification for the search and seizure had no reason to cross-examine prosecution witnesses and adduce evidence of his own to rebut the theory now advanced by the People. (See *Giordenello* v. *United States,* 357 U.S. 480, 488 [2 L.Ed.2d 1503, 1510-1511, 78 S.Ct. 1245]; *Reinert* v. *Superior Court,* 2 Cal.App.3d 36, 42 [82 Cal.Rptr. 263]; *People* v. *Adam,* 1 Cal.App.3d 486, 489 [81 Cal.Rptr. 738].)

Gross miscarriages of justice may occur in cases such as the instant one where a motion to suppress evidence is granted at a special hearing in the superior court and the theory upon which the search and seizure might be upheld is not presented until the People seek mandamus.[5] In such cases

[4]In the municipal court at the hearing on the motion to suppress the prosecutor (who was not the same prosecutor who appeared at the preliminary hearing) asserted that under *Schmerber* "whether the blood-alcohol test is admissible . . . depends on . . . one thing, only: . . . if it's done in a medically approved manner, it is admissible. . . . [I]n this case we have consent, that's even better. . . . I don't know the facts of this case, because I wasn't here to handle it—but if there is any suspicion that a man is intoxicated and they have reasonable cause to think possibly there will be an arrest coming forth in a few days . . . they have the right to gather that evidence. They did everything correct under the law. They asked him if he consented. He did. They took it in a medically-approved manner. . . . It is admissible evidence regardless of the implied consent requirement."

[5]Here if the facts are those indicated by the present record the suppression of the blood-alcohol test manifestly frustrates the imperative public interest in combatting the excessive loss of lives and irreparable injuries caused by intoxicated drivers.

under Penal Code section 1538.5, as it now reads, the People do not have an opportunity to have the legality of the search and seizure relitigated in the light of their new theory. The section currently reads, ". . . If defendant's motion is granted at a special hearing in the superior court, the people, if they have additional evidence relating to the motion and not presented at the special hearing, shall have the right to show good cause at the trial why such evidence was not presented at the special hearing and why the prior ruling at the special hearing should not be binding, *or* the people may seek appellate review. . . . *If the people prosecute review by appeal or writ to decision, or any review thereof, in a felony or misdemeanor case, it shall be binding upon them.*" (Pen. Code, § 1538.5, subd. (j).)[6] (Italics added.)

It is for these reasons that I join in the judgment.

McComb, J., concurred.

---

A gross miscarriage of justice also could occur, for example, in a first degree murder case where evidence vital to conviction is suppressed at a special hearing in the superior court but was lawfully obtained under a theory presented for the first time by the People in a mandamus proceeding.

[6]It should be noted that under Penal Code section 1538.5 and decisions of this court a defendant's interests are protected to a greater extent than are those of the People. Under section 1538.5 if pretrial motions to suppress are denied by the municipal and superior court, a defendant may seek appellate review before trial by filing a petition for mandamus or prohibition, and if he is unsuccessful he is not bound by the appellate decision and may seek to relitigate the issue on appeal from the judgment of conviction. (*People* v. *Medina,* 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686].) Also subdivision (h) of the section specifically provides that "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court." *People* v. *O'Brien,* 71 Cal.2d 394, 403 [78 Cal.Rptr. 202, 79 Cal.Rptr. 313, 455 P.2d 138, 456 P.2d 969], stated that "By omitting the word 'renew' from subdivision (h), the Legislature must have intended to limit the operation of that provision to instances in which the motion is 'made' or 'entertained' for the first time at trial." Subsequently in *People* v. *Superior Court,* 4 Cal.3d 605, 611 [94 Cal.Rptr. 250, 483 P.2d 1202], we declared that "It should be emphasized that the *O'Brien* rule is limited to preventing the renewal of a prior motion to suppress, rather than the making of a new motion based upon grounds either unavailable or unknown to defendant at the time his prior motion was denied. (Pen. Code, § 1538.5, subd. (h).) Thus, for example, if there occurred an intervening change in the applicable law or the discovery of new evidence in support of suppression, the trial court could entertain a new motion based upon such grounds." Also in an appropriate case relief can be afforded to a defendant on the basis of ineffective counsel. (See, e.g., *People* v. *Ibarra,* 60 Cal.2d 460, 463-466 [34 Cal.Rptr. 863, 386 P.2d 487].)