Filed 10/20/21  P. v. Irving CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>DANIEL IRVING,<br><br>　　Defendant and Appellant. | G060195<br><br>(Super. Ct. No. C1651027)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on September 22, 2021, be modified in the following particulars:

On page 8, second full paragraph, the fourth sentence is deleted and replaced with the following:  "The prosecutor added Sirmons reviewed the police reports and offered his opinion as to the collision's primary factors."

On page 8, third full paragraph, the second sentence is deleted and replaced with the following:  "Counsel explained the prosecutor asked Sirmons to calculate Irving's speed and the primary collision factor, and he prepared two reports."

On page 15, first full paragraph, the second sentence is deleted and replaced with the following: "As a result of counsel's failure, Irving argues he received ineffective assistance of counsel."

On page 15, second full paragraph is deleted and replaced with the following: "It is true the probation officer stated Irving was presumptively ineligible for probation because he willfully inflicted great bodily injury. The prosecutor relied on that fact and the fact Irving was on probation for driving under the influence to argue probation was inappropriate. It is also true Irving's trial counsel did not dispute the probation officer's conclusion."

The petition for rehearing is DENIED. This modification does not effect a change in judgment.

O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL IRVING,<br><br>    Defendant and Appellant. | G060195<br><br>(Super. Ct. No. C1651027)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Santa Clara, Jacqueline M. Arroyo, Judge.  Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share and Ashley Harlan, Deputy Attorneys General, for Plaintiff and Respondent.

Daniel Irving appeals from a judgment after a jury convicted him of two counts of driving under the influence of alcohol and causing bodily injury to another person.  Irving argues insufficient evidence supports his convictions, the trial court erred by denying his right to cross-examination, and the court erred by denying probation based on the mistaken belief he was ineligible.  None of his contentions have merit, and we affirm the judgment.

FACTS

Just before midnight, Antonio Maldonado was walking with his brother-in-law, Edgar Cantoran, on Market Street in downtown San Jose near the convention center.  Cantoran was on his cell phone but ended the call when they approached the intersection.  The intersection was well lit and visibility was excellent.

They pressed the pedestrian crosswalk button and began crossing the street.  Cantoran initially said they entered the intersection when the red hand signaling do not walk was flashing (too early) and then said they were in the crosswalk when the red hand signaling do not walk started flashing (too late).

They were in the middle of the crosswalk when Maldonado heard Irving's car approaching "really fast."  Maldonado, who was a couple of steps behind Cantoran, retreated toward the sidewalk, but Cantoran ran toward the opposite side of the street.  Irving's Jetta hit Cantoran.  Maldonado ran to Irving and punched him.  Maldonado tried to talk to Cantoran, but he was unconscious and seizing.

Emergency response personnel arrived and took Cantoran to the hospital.  Inside Irving's vehicle, police officers located an open container of alcohol, cannabis substances, and cannabis paraphernalia.

Officer Zachary Preuss arrived at the scene and determined the applicable speed limit was 35 miles per hour.  Irving told Preuss that he was "120 [percent] positive" Cantoran was "in the crosswalk on a green light."  Irving claimed he was

2

driving about 35 miles per hour.  Irving initially denied drinking any alcohol or ingesting any cannabis.  Irving ultimately admitted he drank two or three beers and smoked cannabis between two and four hours before the collision.  Preuss conducted field sobriety and breathalyzer tests.  The breathalyzer test measured Irving's blood alcohol content at 0.14 and 0.13 percent.  At the police station a few hours later, Irving submitted to a blood draw.

Cantoran remained in a coma for two weeks—he suffered a brain injury, including brain bleeding, and acute respiratory failure.  After waking from his coma, Cantoran was unable to speak.  As a result of his injuries, Cantoran developed seizures and experienced changes to his personality.  He was unable to recognize his partner and their child.

A third amended information charged Irving with the following:  driving under the influence of alcohol and causing bodily injury to another person (Veh. Code, § 23153, subd. (a)) (count 1); driving under the influence of alcohol with a blood alcohol level of 0.08 percent and causing bodily injury to another person (Veh. Code, § 23153, subd. (b)) (count 2); and driving under the combined influence of any alcoholic beverage and drug and causing injury to another person (Veh. Code, § 23153, subd. (g))[1] (count 3).  The information charged him with concurrently committing the following acts forbidden by law or neglecting to perform a legal duty on each count:  basic speed law (Veh. Code, § 22350); prima facie speed law (Veh. Code, §§ 22351-22352); unsafe lane change (Veh. Code, § 22107); and failure to yield the right of way at a crosswalk (Veh. Code, § 21950).  It also alleged he personally inflicted great bodily injury as to each count. (Pen. Code, §§ 12022.7, subd. (b), 1203, subd. (e)(3).)  Finally, it alleged he suffered a prior driving under the influence conviction.  (Veh. Code, § 23152.)

---

[1]  The information erroneously cited to subdivision (f).

At trial, Husband and Wife testified they were driving in downtown San Jose about 20 to 30 miles per hour. Husband did not recall seeing any pedestrians as he drove. They testified a green Volkswagen Jetta passed them, swerved into their lane, and swerved around the car in front of them. They estimated the Jetta was traveling 40 to 60 miles per hour. They both testified the light was green as the Jetta entered the intersection. Neither Husband nor Wife saw anyone in the crosswalk. Husband heard a loud sound no more than 10 seconds later. As they drove through the intersection, they saw a man lying underneath a car. Husband said, "[A]ll of a sudden I [saw] people on the sidewalk just stop . . . ." Husband estimated there were more than 10 people standing nearby. Wife estimated there were more than five or six people. Husband stopped the car, and Wife called 911. They walked to the intersection and saw a bunch of pedestrians.

Preuss testified concerning his patrol area. When the prosecutor asked Preuss what was "the foot traffic like[]" on a Friday night on the street in question, he answered the following: "It varies. If it's a nice night it can be pretty busy with traffic."

Detective Troy Sirmons testified as an expert in accident reconstruction, i.e., speed and measurements. Sirmons analyzed the data supplied to him by the investigating officers and conducted his own measurements. Sirmons determined Irving was travelling between 38.19 to 46.61 miles per hour. He added that depending on Cantoran's location within the crosswalk, Irving could have been travelling between 37.49 and 48.43 miles per hour. He also stated the calculation could vary depending on whether Cantoran's body stopped naturally or was stopped by the parked car. Sirmons opined Irving's minimum speed could have been 45.49 miles per hour.

Mark Burry, a supervising criminalist, testified as an expert in the effects of alcohol and cannabis on the human body as related to driving a motor vehicle. Burry testified Irving's blood was analyzed at 3:11 a.m. and he had 0.097 blood alcohol content

4

and 9.050 nanograms per milliliter of THC and 120.356 nanograms per milliliter of THC-COOH.[2] Burry opined that at 11:45 p.m., that individual's blood alcohol content would be between 0.13 and 0.16 percent. Burry explained a person driving a vehicle in this condition would be experiencing cognitive function impairments, including increased impulsiveness, overconfidence, and risk-taking behavior and decreased sensory function, including visual acuity, fine motor control, balance, and depth perception. Burry admitted THC's effects were less studied than alcohol and there was not a legal limit for THC. He stated though a combination of alcohol and THC, both central nervous system depressants, would increase effects and impairment. Based on a hypothetical mirroring the facts of the case, Burry opined that based on the alcohol alone, the individual was too impaired to safely operate a vehicle.

Irving offered the testimony of Brad Wong, an expert in speed and automobile/pedestrian collisions and human factors of drivers. Wong determined Irving was travelling between 35.25 and 36.6 miles per hour. Based on his analysis, Wong could not say within reasonable engineering certainty that the vehicle was travelling faster than 35 or 36 miles per hour. On cross-examination, Wong clarified the 35 to 36 miles per hour was a minimum speed calculation. He also calculated Irving was travelling at a maximum speed of 51 miles per hour, but he did not include that calculation in his report. He admitted it was "possibl[e]" Irving was travelling 51 miles per hour but did not find that rate to be "within reasonable engineering certainty."

The jury convicted Irving of counts 1 and 2 and found true he personally inflicted great bodily injury. The jury acquitted him of count 3. At a bifurcated bench trial, the trial court found true Irving suffered the prior conviction. The trial court sentenced Irving to prison for six years and four months.

---

[2]     The parties stipulated Irving's blood alcohol content was .097 percent and contained 9.050 nanograms per milliliter of THC and 120.356 nanograms per millileter of THC-COOH.

DISCUSSION

*I. Sufficiency of the Evidence*

Citing to and disputing the prosecutor's statement during closing argument that it "'was a foot trafficked area[,]'" Irving argues insufficient evidence supports his convictions because he did not proximately cause Cantoran's injuries.[3] We disagree.

"'[W]e "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.)

"'The criminal law . . . is clear that for liability to be found, the cause of the harm not only must be direct, but also not so remote as to fail to constitute the natural and probable consequence of the defendant's act.' (*People v. Roberts* (1992) 2 Cal.4th 271, 319 . . . .) In determining whether a defendant's acts were the proximate cause of the death of a human being, we ask whether the evidence sufficed to permit the jury to conclude that the death was the natural and probable consequence of defendant's act. [Citation.]" (*People v. Taylor* (2004) 119 Cal.App.4th 628, 639-640.)

---

[3] Irving does not contend there was insufficient evidence supporting any other elements of the offenses. He only challenges the causation element. We limit our discussion accordingly.

"[A]n 'independent' intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be 'independent' the intervening cause must be 'unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' [Citation.] On the other hand, a 'dependent' intervening cause will not relieve the defendant of criminal liability. 'A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability. [Citation.] "[] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." [Citation.]' [Citation.]" (*People v. Funes* (1994) 23 Cal.App.4th 1506, 1523.)

Here, in asserting there was no evidence of pedestrian foot traffic in the area, we discern Irving's argument to be there was an independent intervening cause relieving him of criminal liability: it was unforeseeable there would be pedestrians walking in the crosswalk against the do not walk signal. Irving suggests the bystanders were motorists who, like Husband and Wife, parked and walked to the scene instead of pedestrians. His claims are belied by the record.

The evidence demonstrated the incident took place in downtown San Jose near the convention center. Preuss testified the street in question could be pretty busy with foot traffic. Both Husband and Wife testified that as they drove past Cantoran, there were already people gathering around the scene. Husband estimated this was no more than 10 seconds after Irving hit Cantoran. From this evidence the jury could reasonably conclude it was foreseeable there was pedestrian foot traffic in the area. This evidence

7

supported the conclusion Irving should have foreseen the possibility of pedestrians walking in the crosswalk, even against the do not walk signal. (See Veh. Code, § 21950, subd. (d) [vehicle driver "duty of exercising due care for the safety of any pedestrian within any marked crosswalk or within any unmarked crosswalk at an intersection"].) Cantoran and Maldonado walking in the crosswalk against the do not walk signal was a reasonably foreseeable intervening *dependent* cause that did not relieve Irving of criminal liability for his speeding while under the influence of alcohol. There was sufficient evidence Irving proximately caused Cantoran's injuries, and, thus, substantial evidence supported his convictions.

## II. Denial of Cross-Examination

Irving contends the trial court erred by denying his right to cross-examine Sirmons concerning his two reports detailing the primary and associated collision factors. Not so.

### A. Background

Before the prosecutor offered Sirmons's testimony, the prosecutor moved to exclude any cross-examination of Sirmons as to who was at fault. During a hearing on the motion, the prosecutor stated Sirmons prepared a report that estimated Irving's speed. The prosecutor explained Sirmons's calculations were incorrect and his revised estimates showed Irving's speeds were lower. The prosecutor added Sirmons reviewed the police reports and offered his opinion as to the collision's primary factors of the collision. The prosecutor intended to question him only as an expert in accident reconstruction concerning speed and measurements. He did not intend to question Sirmons regarding the collision's cause because that was for the jury to decide.

Irving's trial counsel stated he agreed with much of the prosecutor's legal authority and he did not intend to question Sirmons about fault. Counsel explained though Sirmons prepared two reports. Counsel said that in his first report, Sirmons

8

miscalculated Irving's speed and opined the primary collision factor was his speeding, and the associated collision factors were his failure to yield to a pedestrian and driving under the influence. Counsel stated that in his second report, Sirmons calculated his speed to be lower and opined the primary collision factor was Cantoran violating the pedestrian walk/don't walk statute and the associated factors were Cantoran entering the intersection against the light and Irving driving under the influence. Counsel asserted he should be allowed to question him about those factors "without using the word 'fault' or 'substantial factor.'"

The trial court ruled it would permit the prosecutor to examine Sirmons about Irving's speed and measurements. The court ruled Irving's trial counsel could not question him about the primary or associated factors. The court concluded trial counsel could question him "very carefully" about his initial calculations and his revised calculations and the errors he made.

*B. Law*

"'California law allows expert testimony that is related "to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."' [Citations.] Evidence Code section 805 permits such testimony to embrace an ultimate issue in the case, but experts may not offer their legal conclusions to the jury. [Citation.]" (*People v. Spence* (2012) 212 Cal.App.4th 478, 507.) "'There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. . . . '[T]he true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be

9

fully tried without hearing opinions from those in better position to form them than the jury can be placed in." [Citations.]' [Citations.]" (*Id*. at p. 509.) We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. (*Ibid*.)

*C. Analysis*

Here, the trial court did not abuse its discretion by precluding Irving's trial counsel from cross-examining Sirmons about the primary and associated factors. The sole issue in this case was causation. The jury heard evidence Irving was speeding, under the influence of alcohol and marijuana, and driving erratically, and drove through a crosswalk. The jury also heard evidence Cantoran was in the crosswalk while the do not walk signal was illuminated. Based on the evidence presented at trial, the jury had to determine whether Irving's conduct was a substantial factor in causing Cantoran's injuries. (*People v. Sanchez* (2001) 26 Cal.4th 834, 848-849; CALCRIM No. 240.)

Sirmons's opinions concerning the collision's primary and associated factors were an impermissible legal conclusion that coincided with the ultimate issue in the case. (*Carlton v. Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428, 1432 [police officer's opinion driver was "'most responsible'" for accident was a legal conclusion and not proper subject for expert opinion].) Although Irving's trial counsel assured the trial court it would not use the words fault or substantial factor, that is precisely what counsel sought to elicit from Sirmons. In his second report, Sirmons opined the primary factor of the collision was Cantoran violating the pedestrian walk/don't walk statute. The jury could rely on that expert opinion testimony to conclude Irving's conduct was not a substantial factor in causing Cantoran's injuries. That was an ultimate issue in the case, and thus Sirmons's testimony was impermissibly too helpful to the jury in performing its duty. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1183 [trial court excludes expert opinions that invade jury's province because in some cases they are "too helpful"].)

10

Additionally, Sirmons's opinion testimony concerning the collision's primary and associated factors were impermissible because they could be further simplified. The parties presented expert testimony about Irving's speed and intoxication. The jury also heard evidence Cantoran was on his cell phone as he approached the intersection, and he walked in the crosswalk in violation of the pedestrian do no walk signal. It was from this further simplified evidence that the jury could determine who caused the collision. The jury was as competent as Sirmons to weigh all the evidence and draw a conclusion on the issue of Irving's guilt. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.)

Irving cites to *People v. Glass* (1968) 266 Cal.App.2d 222 (*Glass*).[4] In that case, defendant, who was intoxicated, was driving between 60 and 65 miles per hour on a road with a posted speed limit of 45 miles an hour. (*Id*. at pp. 223-224.) Repair crews worked at an intersection and the road was significantly narrowed. (*Id*. at p. 224.) Defendant collided with a repair truck and killed two workmen. (*Ibid*.) There was evidence there was no flagman present to warn motorists of the repair crews, no speed reduction signs, and no barricades nearby to direct traffic out of the danger zone. (*Ibid*.) The trial court excluded a traffic engineer's expert witness testimony concerning the safety measures because it concerned the ultimate issue at trial. (*Id*. at pp. 224-225.) The Court of Appeal concluded this was error because the evidence could have shown that the unsafe condition of the road was the accident's sole cause. (*Id*. at p. 227.)

Unlike *Glass*, here Irving's trial counsel sought to question Sirmons about the primary and associated factors of the collision. In other words, counsel wanted to elicit testimony Cantoran caused the collision by violating the pedestrian do not walk signal and walking in the crosswalk against a red flashing hand. What the *Glass* court

---

[4] Disapproved on other grounds in *People v. Superior Court* (1972) 6 Cal.3d 757, 765-766, footnote 7.

11

held was that the trial court erred by excluding evidence of the underlying conditions of the collision. The trial court here admitted evidence of the underlying conditions of the collision—Irving's intoxication, speeding, reckless driving, and Cantoran's violating the pedestrian do not walk signal—and left it to the jury to decide the ultimate issue of who caused the collision. *Glass* does not hold an expert can offer an opinion on the ultimate issue of guilt. Thus, the trial court did not abuse its discretion by denying Irving the right to cross-examine Sirmons concerning the collision's primary and associated factors. Because the court did not err, Irving suffered no prejudice.

### III. Probation Ineligibility

Irving asserts the trial court erred by denying him probation based on the mistaken belief he was presumptively ineligible. Alternatively, Irving asserts he received ineffective assistance of counsel. We discuss these contentions below.

### A. Background

In the probation report, the probation officer stated Irving had "[l]imited eligibility pursuant to" Penal Code section 1203, subdivision (e)(3)—a trial court must not grant probation to any person who "willfully inflicted great bodily injury" except in unusual cases in which it serves the interests of justice. She indicated that although he had suffered no felony convictions, he had suffered two alcohol related misdemeanor convictions, one of which was for driving under the influence of alcohol, and he was on probation when he committed the current offense. The probation officer stated there were no mitigating circumstances and four aggravating circumstances, which were the following: the manner in which Irving conducted the crime indicates planning; the crime involved the actual taking of great monetary value; Irving's convictions were of increasing seriousness; and Irving's probation performance was poor. The probation officer stated she considered the mitigated term but Cantoran's severe injuries

12

outweighed such a sentence. She recommended the trial court impose the middle term of two years on count 1 plus five years for the great bodily injury enhancement for a total of seven years in prison.

Irving's trial counsel submitted a sentencing brief that requested the trial court impose probation on 26-year-old Irving. Counsel explained Irving was exposed to alcohol and methamphetamine in utero and he has suffered from developmental, psychological, and behavioral problems his entire life. However, counsel did not address whether Irving was eligible for probation.

At the sentencing hearing, the trial court indicated it had read the written submissions. The prosecutor requested the trial court not impose a sentence less than six years and four months. The prosecutor added probation was inappropriate based on the fact Irving was on probation for driving under the influence of alcohol when he drove intoxicated and hit Cantoran leaving him with "the brain capacity of a five-year-old."

Irving's counsel requested the trial court sentence Irving to probation. Counsel stated Irving "disagree[d] with the probation officer's report in many respects, and recommendation." Counsel disagreed Irving's prior convictions establish a pattern or that he lacked remorse. However, counsel did not dispute Irving was presumptively ineligible for probation.

The trial court explained it was very familiar with the facts and spent considerable time reflecting on the case. The court said, "it is very difficult because I understand how young . . . Irving is and how he didn't have fly [*sic*] malicious intent to hurt anyone." The court added though it had to consider Cantoran's and his family's damage, trauma, and loss. After stating it had to consider the facts, law, and aggravating and mitigating factors, the court said, "With respect to sentencing, probation is denied." The court sentenced Irving to the low term of 16 months on count 1 and a consecutive term of five years on the great bodily injury enhancement for a total of six years and four months in prison.

13

*B. Law*

"The decision whether to grant or deny probation is reviewed under the abuse of discretion standard.  [Citations.]  'An order denying probation will not be reversed in the absence of a clear abuse of discretion.  [Citation.]  In reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary.  [Citations.]'  [Citation.]" (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1091.)

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'  [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)  "Where . . . a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination.  [Citations.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 912.)

"Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion.  [Citations.]  Further, remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion.  Error may not be presumed from a silent record. [Citation.]  '"[A] trial court is presumed to have been aware of and followed the applicable law."  [Citations.]'  [Citation.]" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228-1229; *Gutierrez, supra,* 58 Cal.4th at p. 1390.)

14

*C. Analysis*

Irving asserts the trial court mistakenly believed he was presumptively ineligible for probation and he forfeited appellate review of this issue because his trial counsel failed to dispute that proposition in his sentencing brief or at the hearing. As a result of counsel's failure, Irving argues he received effective assistance of counsel.

It is true the probation officer stated Irving was presumptively ineligible for probation because he willfully inflicted great bodily injury. It is also true his trial counsel did not dispute the probation officer's conclusion.

But we cannot conclude the trial court mistakenly believed Irving was presumptively ineligible for probation based on the record before us. During the sentencing hearing, the trial court stated, "[Irving] didn't have [any] malicious intent to hurt anyone." Based on the court's statement, we can reasonably conclude it did not proceed based on the conclusion Irving "willfully inflicted great bodily injury." Because we presume the trial court was aware of and followed the applicable law, we cannot conclude the court denied Irving probation based on the mistaken belief he was presumptively ineligible for probation. Moreover, the fact the court weighed the circumstances for and against probation indicates it was aware it had a choice.

Additionally, we cannot presume from a silent record the court erred. This was not a situation where the court made any comments demonstrating it believed Irving was presumptively ineligible for probation. In fact, the court made a factual finding that removed him from presumptive ineligibility. Based on this record, we conclude the trial court did not deny Irving probation under the mistaken belief he was presumptively ineligible.

15

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.